Frain *vs.* State of Georgia.

WALTER S. FRAIN, plaintiff in error, *vs.* the STATE OF GEORGIA, defendant in error.

1. Though the verdict be right under the evidence, if the Court improperly refused a continuance, and admitted illegal evidence against the accused, a new trial will be granted. (R.)

2. One bad count in an indictment is no ground for arrest of judgment: the verdict is to be presumed to have been found upon the good count. (R.)

3. When one charged with larceny was threatened by the owner of the goods to be "prosecuted for damages," and solicited to settle, and he replied that he would pay fifty dollars if it could be settled: *Held*, that this was not admissible to show the guilt of the defendant on an indictment for the larceny, the confession, if such it was, having been made under the hope of a settlement.

4. If a prisoner is forced to trial when too sick to have use of his faculties, a new trial will be granted. (R.)

5. It is error in the Court, in a criminal case, to refuse to permit the defendant, on a motion to continue, to be sworn, to prove that a witness has been subpœnaed, on the ground that the Court, from what has transpired in its presence, could not believe him on his oath.

6. The certificate of a physician is not good evidence of a fact necessary to be proven. (R.)

Criminal Law. Continuance. Confessions, etc. Before Judge SNEAD. City Court of Augusta. May Term, 1869.

Frain was indicted in said Court for larceny of a bale of cotton. He was absent. His counsel moved to postpone the trial for that day, because of Frain's sickness. They produced a certificate of a physician that Frain was suffering from a severe contused wound of the left side, affecting his eighth and ninth ribs, and was thereby "indisposed·from attending to his duties in Court," and they showed, by a witness, that a few days before that Frain was at a fire and got a fall from a fence, and thus injured his side. A witness, who had been summoned by Frain, was called and did not appear. The Judge fined him for non-appearance. Subsequently the witness was found, and gave as his reason for non-appearance, that Frain had told him that his case would not be tried, and to go home and attend to his business. This excited the suspicions of the Judge and he requested a physician, who was of the jury, to go with a bailiff and examine Frain, and ordered that, if he thought him in condition to come, the bailiff should bring him into Court. They went and brought Frain, and this physician reported that he found Frain in bed with a wound on his side, but did not consider *that* sufficient to keep him from Court; that Frain's nerves were unstrung, but that he thought that was the effect of liquor. Frain's counsel further produced a certificate of a third physician of the sickness of a witness in behalf of Frain, and stated what they expected to prove by said witness. It was that Frain bought the cotton from a negro, etc. They asked the Solicitor General to admit what this witness would testify to ; he said he would, if they could show that the witness

Frain *vs.* State of Georgia.

had been subpœnaed. They proved by the sheriff that he got a subpœna for the witness and handed it to Frain and offered to swear Frain as to the fact of his handing the subpœna to the witness. This was objected to. The Court asked a member of the bar for his opinion. He said the Court should allow Frain to be examined, but that he ought to be satisfied as to the *bona fides, etc.,* of his statements. Thereupon the Judge declared that Frain's conduct had been such as to discredit him, that he had pretended to be sick to avoid a trial and that the Court had to send a doctor after him with an officer, and that, therefore, he would not hear him testify as to said service of the *subpœna,* and he ordered the trial to proceed. All this occurred in presence of the jurymen.

After examining one witness (Young) the Solicitor examined the owner of the cotton. He testified, among other things, "I went to Frain's store and said I did not want the trouble of coming to Augusta, that I intended to prosecute him for damages, and told him I preferred to settle. I referred to a civil suit, not to a criminal suit. I don't remember the amount I agreed to take. I meant to compromise a civil suit, but I did not intend to compromise a criminal suit; defendant then said he would rather give $50 00 or $75 00, than have the trouble of it, if the whole thing was settled." This evidence was objected to but the objection was overruled.

The indictment was as follows: "State of Georgia. City of Augusta. The Grand Jurors, chosen, selected and sworn for the city of Augusta, to-wit:  *    *    *    *    *, in the name and behalf of the citizens of Georgia, charge and accuse Walter S. Frain, of the city and State aforesaid, with the offense of simple larceny. For that the said Walter S. Frain did in the city of Augusta and the State aforesaid, on the 15th day of February, 1869, with force and arms one certain bale of cotton, marked thus: T Y, of the value of $100 00, and of the personal goods and chattels of one Thomas Young, then and there being found, then and there did wrongfully and fraudulently take and carry away with intent the same to steal, contrary, etc.

And the Grand Jurors aforesaid, further charge and accuse the said Walter S. Frain with the offense of accessory after the fact. For that on the 15th day of February, 1869, Jordan Williams and Albert Smith, with force and arms, a certain bale of cotton" (described fully as in the first count) " fraudulently and wrongfully take and carry away, with intent to steal the same. And the said Walter S. Frain did, on the 15th day of February, 1869, receive said bale of cotton, knowing the same to have been stolen, contrary," etc.

Defendant's counsel requested the Court to give the following charges : 1st. "In an indictment time and place are material allegations, and the omission of either is not a matter of form and is not cured by pleading on the part of defendant; that the time, place and value of the property is part of the substance ; that these allegations are material and must be proved. 2d. That each count in the indictment must be perfect in itself, and if one count alledges the place where the offense was committed, and the other does not, the jury has no right to look to the first count to cure the defect in the second." The Court gave the first request, with this addition: "It is sufficient, if time, place and value can be gathered from the whole indictment and evidence." · He refused the second request, stating to the jury that they " could look into the whole indictment, and if they were satisfied there was enough with the evidence adduced to convince them of the guilt of the prisoner, they could so find." Their verdict was : " We the jury find the defendant guilty generally."

Frain's counsel moved an arrest of judgment, upon the ground that the indictment had no such averment of place as to give jurisdiction to the City Court of Augusta. The Court overruled the motion. Thereupon counsel for Frain moved for a new trial, upon the grounds that the Court erred in refusing said continuance, in refusing to let Frain testify to subpœnaing said witness; because said evidence of Young was inadmissible, because the verdict was contrary to the evidence, because said proceedings and remarks by the Judge were such as to prejudice the jury against Frain. With this last ground was evidence to show that the witness who was

fined was told by Frain, at the term before, not to attend that term, because the case had been continued, that that was true, and that Frain never told him not to attend the term at which this trial was had.    There were other grounds touching the charge of the Court, and as to newly discovered evidence, but they were not passed upon by this Court.    The Judge refused a new trial, and error is assigned upon his failure to arrest the judgment, and his refusal of a new trial, upon the grounds aforesaid.'

McLaws & Ganahl, for plaintiff in error, cited as to the arrest of judgment : Revised Code, section 4536, as to the continuance: 9th Ga. R., 375 ; 14th, 24 ; 5th, 54 ; as to the implied confession : Rev. Code, sec. 3740.

Prescott, Solicitor General, for the State, replied, the indictment was good, under section 4535, Rev. Code ; a good count may supply defects of an imperfect count : Regina vs. Waverton, 16 British Cr. Cases, 333 ; upon a general verdict, presumption is that it was on the good count : 10th Ga. R., 48 ; the objections to the indictment came too late : 7th Ga. R., Studstill's case, 34th Ga. R., 108.

McCay, J.

1. It is with much reluctance we reverse the judgment of the Court below in this case.    We have no complaint with the verdict of the jury ; on the contrary, we think it proper enough under the facts as they were presented.

2. We think, too, that the motion in arrest of judgment was properly overruled.    The verdict of "guilty generally" is only in accordance with the usual instruction given to the jury in cases where in one count there is a charge of an offense, and in another count a charge of a lower grade of the same offense.    Receiving stolen goods, knowing them to be stolen, makes the receiver accessory after the fact to the theft : Code, section 4420.    A verdict of guilty generally, convicts the accused of the principal offense.    This Court has held, that after verdict, one bad count in an indictment is no

ground for a motion in arrest of judgment. The verdict will be presumed to have been found on the good count: 11th Ga. 92; 12th Ga. 393.

3. We think, however, that the testimony of the witness, Young, was improperly admitted. Even in a civil case it was inadmissible, because evidently and in the terms, the language of the accused was used by way of an offer to compromise the claim of the witness upon him for damages, and by the Code, section 3736, it was inadmissible. As a confession, it is inadmissible, because made under the influence of a promise to settle. It is clearly within the rule of section 3740, of the Code, excluding admissions made under the influence of fear or hope of reward.

4. We are further of opinion, that this defendant did not have a fair trial. The action of the Court in dragging him from his bed and forcing him to trial, in the condition he was in, was not only harsh, but unauthorized. However bad a man may be, he is entitled, when put upon his trial for a crime, to the full use of his faculties. From all the evidence it is apparent that this man ought, during the trial, to have been in bed, and it was not only unjust to him, but unjust to the public justice of the country, to put him upon his trial under the circumstances.

5. Clearly, the prisoner may, in a showing for continuance, state, under his oath, that a witness has been subpoenaed. It is a necessary part of the showing for a continuance which the rules of Court require to be under the oath of the defendant: Rules of Court, 36. He does not do this as a witness before the jury. It is for the Court alone, and has always been allowed. How much credit is to be given to it depends upon circumstances, and it was error in the Court to refuse to hear him. Infamy is now no ground of incompetency: Act of 1865 and 1866. Perhaps had the Court heard his story it would have carried conviction with it, in spite of the bad opinion the Court had, perhaps justly, of the teller of it.

6. We do not think a physician's "certificate" proper evidence before a Court of a fact required to be proven, and

we say nothing, therefore, about the effect of it.   These certificates were, a few years ago, very useful documents to sick soldiers, but it is not proper to receive them as evidence in the court-house.