## 688.  SESSIONS *v.* THE STATE.

1. Where, in an indictment containing more than one count, a defendant waives his right, by timely demurrer, to attack a defective count, and goes to trial waiving this defect, the judgment finding him guilty will not be arrested upon motion. The conviction will be presumed to be based upon the good count.

(*a*) The evidence can not be considered on a motion in arrest of judgment. The motion deals solely with the record.

(*b*) The word "counterfeit," as used in section 247 ·of the Penal Code, has a broader meaning than that which appertains to it in common parlance. It includes, not only an imitation of a genuine original, but any paper which purports to be a genuine original.

2. To constitute the offense charged in section 247 of the Penal Code (obtaining goods, etc., on a false writing) it is essential that it be proved that the writing alleged to be false was made in some other person's name, or a fictitious name; and the omission so to instruct the jury was error.

3. Considering the testimony in the light of the admission of the solicitor-general, a conviction of the defendant was not authorized by the evidence, and a new trial should have been granted.

Indictment for forgery, from Terrell superior court—Judge Worrill. July 6, 1907.

Argued October 7,—Decided November 14, 1907.

*H. A. Wilkinson,* for plaintiff in error.

*J. A. Laing, solicitor-general, R. R. Arnold, J. B. Ridley,* contra.

RUSSELL, J. Will Sessions was indicted by the grand jury of Terrell county. The indictment contains two counts. The first charges forgery, and the second charges the offense of obtaining goods on a false writing. The State elected to proceed on the second count in the indictment. That count is as follows: "And the jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse the said Will Sessions with having committed the offense of felony, for that the said Will Sessions, in the county aforesaid, on the 17th day of January, 1906, did then and there designedly, by color of a false and counterfeit writing in words as follows, to wit: 'Mr. Brown, let Will Sessions have what he wants in plow tools and I will see to him paying you when he gets through with me, Jeter,' obtain from D. W. Brown plow tools of the value of $2.05, with intent to defraud the said D. W. Brown, contrary to the laws of said State, the good order, peace and dignity thereof." Section 247 of the Penal Code, under which this count is brought, is as follows: "If any person shall designedly, by color of any counterfeit letter or writing, made in any other person's name, or fictitious name, obtain from any person money, or other valuable thing, with intent to defraud any person, mercantile house, body corporate, or company of the

same, he shall be punished by imprisonment and labor in the penitentiary for not less than two nor longer than seven years." After the defendant was convicted, he moved in arrest of judgment, upon the ground that the indictment under which he was convicted alleged and set forth no crime against the laws of the State of Georgia, for the reason that the indictment does not allege that the counterfeit writing was made in any other person's name or a fictitious name, or that the name of any person was signed to the alleged writing, or that the signature was the name of any other person or a fictitious name. The court overruled the motion in arrest of judgment. Thereafter the defendant moved for a new trial, which was refused. Two questions are presented by the record. (1) Did the court err in overruling the motion in arrest of judgment? If so, this would be conclusive of the case. (2) And if the court did not err in overruling the motion in arrest of judgment, is the verdict contrary to law?

1. We think the court ruled correctly in overruling the motion in arrest of judgment. There are two counts in the indictment, one good on its face and one defective. The defendant, by a timely demurrer, could have reached the defect in the second count of the indictment and have availed himself of it. He preferred to waive this right. He went to trial upon the indictment (which, while it contained a defective count upon which he was tried, also contained one good count), and was convicted. The motion in arrest of judgment deals solely with the record. The court can not look to the evidence to determine the merits of this motion. Nothing can be considered except the record and the verdict. In passing upon the motion in arrest of judgment, therefore, the court had before it an indictment in which there was one perfect count, and a verdict finding the defendant guilty. The court had to presume that the evidence adduced was sufficient to support the first count of the indictment; and this being true, there was no merit in the motion. That one count in an indictment containing more than one count is bad is no ground for arresting the judgment; the verdict is presumed to have been found upon the good count. *Bulloch* v. *State,* 10, *Ga.* 48; *Frain* v. *State,* 40 *Ga.* 529; United States *v.* The Pirates, 5 Wheaton, 209.

The second exception in the bill of exceptions assigns error on the overruling of the motion for new trial. It is insisted that the

court erred in failing to charge the jury that the counterfeit order must be made in some other person's name, or a fictitious name, and that it is essential to the completion of the offense defined in section 247 of the Penal Code that there shall be an original paper which the accused is guilty of counterfeiting,—that there can be no counterfeit unless there is an original. The writer, considering the rulings quoted in Words and Phrases Judicially Defined, Vol. 2, p. 1650, and especially the ruling in *The State* v. *Calvin, R. M. Charlton's Rep.* 151 (before we had carefully analyzed it), as well as the fact that the numerous sections in our Penal Code would seem to provide for all possible species or cases of forgery, was at first inclined to the view that in order to distinguish the offense from that of forgery, and to authorize a conviction under section 247 of the Penal Code, there must be shown to have been an original which was imitated. It is said by the Supreme Court of Alabama in Thirman *v.* Mathews, 1 Stew. 384: "In common parlance a counterfeit is a likeness or resemblance intended to deceive and to be taken for that which is original and genuine." The Supreme Court of Maine, in State *v.* McKenzie, 42 Me. 394, defined "counterfeit" as follows: "The word 'counterfeit' means to make in imitation something else, with a view to defraud by passing the false copy for genuine or original." In U. S. *v.* Barrett, 111 Fed. 372, a counterfeit was defined to be "an instrument falsely made in similitude of a genuine instrument." In the *Calvin* case, above cited, it was held that the use of the word *counterfeit,* ex vi termini, imported an imitation, likeness, or resemblance, an "imitation of or purporting to be" a genuine original. Upon further consideration and investigation we are convinced that the word "counterfeit," as used in section 247, has a broader significance. If this be not true, the section would be of no effect in any case where the paper used with intent to defraud was made in the name of a fictitious person. If the person purporting to make the counterfeit letter or writing was fictitious, there could never be a genuine original. The word counterfeit, as used in section 247, evidently refers not only to an imitation of a genuine original, but to any paper which *purports to be* a genuine original, whether made in a real person's name or in a fictitious name. A careful study of the question and especially of the *Calvin* case, supra, convinces us that this is the Georgia defini-

tion properly applicable to the word "counterfeit" in this section, whatever may be the definition in other jurisdictions.

2. It is further insisted that the court erred in charging the jury as follows: "If you believe from the evidence, and beyond a reasonable doubt, that the defendant, Will Sessions, in Terrell county, on or about the day alleged in the bill of indictment, delivered to D. W. Brown the order or instrument set out and described in this count of the indictment, and if you further believe beyond a reasonable doubt that said order was a counterfeit, and that the defendant delivered the same to Brown for the purpose of obtaining from him the articles alleged in the bill of indictment, and that he obtained the same from Brown, and it was with the intent to defraud D. W. Brown,—if you believe that beyond a reasonable doubt, then you will be authorized to convict him under this bill of indictment;" the error, as insisted, consisting in omitting to charge the jury that the counterfeit must have been *made in some other person's name or a fictitious name.* The defendant was on trial, at the election of the State, for obtaining goods on a false writing. The defendant, as was his privilege, waived his right to be tried on a good indictment, by declining to demur. Any defendant can do this at his peril. It amounts to saying, "I will consider the indictment as setting forth the offense in form and substance; prove me guilty if you can." But the waiver of proper pleadings does not include a waiver of proper and sufficient proof to authorize conviction of the offense with which the defendant stands charged in the accusation whose defects of form or substance he is content to waive. Nor does it dispense with any of the essentials of a legal trial, except the matter waived. Suppose I am arraigned on an indictment purporting to be for carrying a concealed weapon, in which it is alleged that at a stated time and within the jurisdiction of the court I unlawfully carried a pistol. This would charge no offense. I have the right to demur or to move to quash the indictment. I can waive this at my option. Suppose that the indictment also contains a count for carrying the pistol to a public gathering, which count is perhaps good in form and substance. If I waive my right to demur, and should be convicted on the indictment, I can not move in arrest of judgment; because I will be presumed to have been convicted of carrying the pistol to a

public gathering. But I still have the right to waive my demurrer. And having waived it, if upon the trial the State voluntarily abandons the charge of carrying the pistol to a public gathering, my waiver will extend just as far as it did before to the defects in the pleadings, and no further. I am then on trial on an accusation which I admit *properly charges* me with carrying a pistol concealed. But by my plea of not guilty I deny my guilt, and it is incumbent on the State to prove my guilt of that offense just as much as if the indictment were in fact perfect. The jury, in such a case, would have to be instructed that they must be satisfied that I carried the pistol *concealed,* before I could be found guilty.

We think, therefore, that the fact that the defendant waived his right to demur (for both counts of the present indictment are demurrable) extended no further than to waive his right to be tried upon a perfect indictment. The law applicable to the offense of which he stood accused (even if the charge in the accusation was fatally defective) should have been as correctly submitted to the jury, and the evidence should have shown his guilt as satisfactorily and fully, as if all counts in the indictment were perfect. Otherwise, if one requisite could be dispensed with, so could another and another, until the defendant's mere waiver of a defect in the pleadings would amount to a plea of guilty. The charge delivered was, therefore, error, in that the jury were not instructed more fully what kind of counterfeit the defendant must have been shown to have used with intent to defraud, and especially in that the jury were not charged that the evidence must show that the counterfeit order was made in some other person's name, definitely pointed out in the evidence, or in a fictitious name likewise disclosed. It is as essential to the completeness of the offense defined in section 247 that the writing used to obtain money or other thing of value should be shown to be in the name of another person, —either a real person, or, if the name signed be fictitious, that that fact be made to appear,—as that the instrumentality employed to defraud should be in writing at all; and that the jury should be so instructed. The offense is obtaining goods, etc., on a *false* writing. The defendant, by not demurring to the omission in the indictment, waived his right to be informed in whose name the writing he was charged with using was made, and whether the per-

son was real or fictitious, but he still had the right, under his plea of not guilty, to have the offense for which the State had elected to try him correctly defined and its essentials stated to the jury.

3. We think, too, that the court erred in not granting a new trial because the verdict is without evidence to support it, and, therefore, contrary to law. As we have already ruled, the court can not, in passing upon the motion in arrest of judgment, refer to or consider the evidence. But upon the judge's consideration of the motion for new trial, the case is different. If the question of the sufficiency of the evidence is presented by the motion, it is his duty to compare the evidence adduced with the allegations of the indictment, and determine whether the guilt of the accused has been established to his satisfaction. But this is by no means all of his duty. The trial judge is charged with a responsibility of completely reviewing the whole case, which is lodged with no other power in this State. He is empowered to exercise a discretion which is not within the jurisdiction of the Supreme Court or of the Court of Appeals. He can review the verdict of the jury, and considering every phase of the testimony, testing its reasonableness or unreasonableness, and even applying his own opinion and knowledge of the credibility of the witnesses to their testimony, see whether justice has in fact been done by the rendition of the proper verdict upon the evidence submitted. And if he is satisfied that injustice has been done, he has the power to order a new trial. Courts for the correction of errors have no such power, and hence, if a verdict has any evidence to support it, the approval of the trial judge is an indorsement of the truth of the testimony in support of the verdict, which places the credibility of such testimony beyond question. But, as we stated above, this is not the whole duty of the trial judge upon review of the case on motion for new trial. He has the whole trial under review and knows everything which has transpired in the presence of the court during the investigation. In this case the State elected to try the defendant on a defective count in the indictment, after the close of the evidence. This was tantamount to an admission in judicio by the State that the defendant was not guilty of forgery as charged in the first count. After conviction, under numerous decisions, the presumption arose that the defendant had

been convicted on the good count. The election of the State to try the defendant on the count for obtaining goods on a false writing amounted to an admission in judicio that the State had failed to sustain the charge of forgery. And the evidence in the record does not prove that the defendant forged the paper in question. There being no evidence to authorize a conviction for forgery (that is, upon the only good count in the indictment), and, to the contrary, an admission by the State that the defendant was not guilty of that offense, the verdict was, for want of evidence, contrary to law, and a new trial should have been granted.

*Judgment reversed.*