## FREEMAN *vs.* THE STATE OF GEORGIA.

1. The charge in this case, as a whole, was full and fair, and covered every possible theory of the defence set up.
2. On a trial of a defendant for murder, it is the duty of the court to give to the jury the definition of each grade of homicide, and also the law of justifiable homicide, provided the testimony will authorize it; but where there is no evidence whatever on which the jury could base a verdict finding defendant guilty of involuntary manslaughter, a failure to charge on that subject is not error.
(*a.*) The evidence shows a plain case of murder.
(*b.*) Every person is presumed to intend the natural and necessary consequences of his acts.
3. Although there may be a mutual intention and agreement to fight, yet if one of the disputants kill the other with malice, it is murder.
(*a.*) There was no evidence on which to base a charge as to a mutual intention or agreement to fight, and such a charge should have been refused.
4. There was no error in charging that the presumption of innocence remained with the defendant until overcome by evidence showing his guilt beyond a reasonable doubt.
November 13, 1883.

Criminal Law. Charge of Court. New Trial. Before Judge BRANHAM. Floyd Superior Court. March Term, 1883.

Reported in the decision.

WRIGHT, MEYERHARDT & WRIGHT, for plaintiff in error.

J. I. WRIGHT, solicitor general; T. W. ALEXANDER, for the state.

HALL, Justice.

The prisoner and deceased, confined in the chain-gang of Floyd county, were engaged in working the road, the latter digging up dirt with a pick, and the former throwing it into a cart with a shovel, when an altercation arose. The prisoner accused the deceased of being in his way ; alleged that this was frequent. The deceased repelled the accusation, using, according to some of the witnesses for the defence, coarse and vulgar language, and threatening to stick his pick in the rumps of some of his fellow-prisoners. He made no demonstration to that end ; got back three or four feet out of the prisoner's way, and went on with his work. At this point, the prisoner struck him on the temple with the spade and felled him to the earth, and after he was down, immediately repeated the blow with the blade of the spade; which struck him near the top of the head. He died almost instantly from the wounds, each of which was shown, by the surgeon who made the examination, to have been mortal.

Under this testimony and the charge of the court, the jury found the prisoner guilty of murder, and he was sentenced to death. A motion was made for a new trial, and was refused by Judge Branham, who presided at the hearing of the same, the case having been tried by Judge Stewart.

Besides the usual grounds of the motion for a new trial, error was alleged to have been committed in the charge given to the jury,

(1.) "Because the court failed and neglected to give in charge the law concerning involuntary manslaughter, thereby excluding from the consideration of the jury all the evidence that might have shown, or tended to show, that defendant was guilty of that offence, and was not guilty of murder."

(2.) In charging that, although the parties had a mutual

intention and agreement to fight, yet, if the killing was done with malice, it would be murder.*

(3.) In charging, when the defendant filed the plea of not guilty, he was presumed to be innocent, a presumption which remained and continued with him through the case, unless it should be overcome by evidence. If the evidence failed to overcome such presumption and to satisfy the jury, beyond a reasonable doubt, that he was guilty, they should not convict; but if it showed him guilty of murder or manslaughter, they would find him guilty of the offence shown; but otherwise, not guilty at all.

The error assigned on this charge is that the last sentence is "too strong," and tended "to mislead the jury as to their duty to find the defendant guilty of murder or manslaughter;" by which we understand that it withdrew from their consideration any circumstances in evidence which would have authorized them to find a verdict convicting the defendant of involuntary manslaughter.

Neither of these grounds is verified by the judge who presided at the trial, and from his charge, which was written out at length, filed in the case and comes up as a part of the record, the two last grounds of the motion require correction to make them conform precisely to what was charged.

1, 2. The charge, as a whole, was full and fair and covered every possible theory of the defence set up. No right to

---

*The language of the charge was as follows: "Now, gentlemen of the jury, if these parties met together and an altercation occurred, and there was a mutual agreement and intention and purpose to fight, and one slew the other—for instance if they met together,—it is for you to say if they were working together, and words arose and they agreed mutually to fight, if one had a shovel and the other a pick or axe or any other instrument, and one was killed, it would either be murder or manslaughter, depending upon whether there was malice or not. If the killing was done under a sudden impulse of passion, it would be manslaughter, although they had a mutual intention and agreement to fight; but if a killing occurred, and if the killing was done with malice, it would be murder. If you believe that the parties had a mutual agreement to fight, and under a sudden heat of passion the defendant killed the deceased, he would be guilty of manslaughter; but if you believe he did it with deliberation and malice, it would be murder." The other charge is substantially stated in the next ground of error. (R)

which the defendant was entitled, was withheld; justice was meted out to him liberally and mercifully. The evidence made a very plain case of murder.   There is nothing in the evidence which would authorize the jury to conclude that the prisoner killed the deceased without any intention to do so, or to show that the killing was involuntary; and even if it could be inferred, from the facts in evidence, that it was not the purpose of the defendant to kill, yet it happened in the commission of an unlawful act, which, in its consequences, naturally tended to destroy life, if indeed it was not a felonious assault, which would have subjected the party to imprisonment in the penitentiary in case death had not ensued, in either of which events it was murder under the law.   Code, §4337.

Persons are presumed to intend the natural and necessary consequences of their acts.   Here was an assault with a weapon likely to produce death, without any legal excuse or necessity for making it.   It was murderous and persistent.   After the deceased had received one mortal blow, another was given.   A command to desist from the second blow was unheeded or disregarded.   This persistence indicates the original wicked purpose too plainly to leave room for doubt.

The court did not err in refusing to submit to the jury the law as to involuntary manslaughter.   There was no aspect of the evidence that made it applicable to the case. In Teal's case, 22 *Ga.*, 75, 76, 83, 84, the law upon this question was thus laid down: "On a trial of a defendant for murder, it is the duty of the court to give to the jury the definition of each grade of homicide, as regulated by the penal Code; and also of justifiable homicide, provided the testimony will authorize it.   If it be apparent, however, that the defendant is guilty of murder or voluntary manslaughter, or is not guilty, it is not error in the court so to charge."   Lumpkin, J., delivering the opinion, said: "Error is assigned because the court did not charge the jury as to involuntary manslaughter.   Is there a particle of proof to

authorize such a charge? In *Davis vs. The State*, 10 *Ga.*, 101, citing the previous case of *Holder vs. The State*, 5 *Ga.*, 441, this court did say that, in view of the facts disclosed by the record, "the court below ought to have given to the jury the definition of murder, voluntary manslaughter and the two grades of involuntary manslaughter, and also the definition of justifiable homicide, and left it to them to find under which definition it fell, and not to have instructed the jury that they must find the defendant guilty of murder, voluntary manslaughter, or not guilty. Could we say the same thing here in view of the facts disclosed in this record. * * * * It was, then, as the court stated, either murder or voluntary manslaughter, or justifiable homicide. And so the jury was obliged to find. And such was the ruling of this court in *Boyd vs. The State*, 17 *Ga.*, 193. * * We hold that the charge should apply to the case by the pleadings and the proof; and that, in just such a case as this, to charge the jury as to the crime of involuntary manslaughter would have been as inapplicable to the case as to have instructed them as to the law of arson or robbery." *Dozier vs. The State*, 26 *Ga.*, 156; *Choice vs. The State*, 31 *Ga.*, 424; *Washington vs. The State*, 36 *Ga.*, 222; *Hill vs. The State*, 41 *Ib.*, 485, 504, 505; *Brown vs. The State*, 25 *Ib.*, 200, 215, 216; *Durham vs. The State*, February term 1883, in MS.; *Jones'* case, 65 *Ib.*, 148; *Wynne's* case, 56 *Ib.*, 113; *O'Shield's*, 55 *Ib.*, 697; *Brassel's* case, 64 *Ib.*, 319; *Hooper's* case, 52 *Ib.*, 607, 611.

3. The defendant's counsel requested the court to charge the law applicable to cases of mutual intention or agreement to fight, which he did. He should have declined to charge upon this subject; there was no evidence upon which such a charge could have been based. Thompson's case, 55 *Ga.*, 48, 50. The charge given, that if the killing, in cases of mutual agreement to fight, was done with malice, it was murder, was not error, even under the ruling in Gann's case, 30 *Ga.*, 67, 72, 73.

4. What possible error there was in charging the jury as to the presumption of the defendant's innocence until the presumption was overcome by proof showing his guilt, beyond a reasonable doubt, we are unable to perceive.

Judgment affirmed.