THE CENTRAL RAILROAD AND BANKING COMPANY *vs.* NASH.

1. Where plaintiff proved the killing of her husband, and that he was not negligent, *prima facie* she was entitled to recover; and where, after she closed her case, the defendant, having pleaded only the general issue, introduced evidence that it exercised due diligence (the suit being for the homicide of an employé of defendant), but did not attempt to show that the husband of plaintiff was negligent, she was then entitled to reply to defendant's theory of the case by additional evidence.

(*a*) Besides, it is always in the discretion of the court to allow additional testimony.

2. A charge: "The plaintiff is limited to the proof of the particular acts of negligence on the part of the defendant as to the cause of the homicide, which are set out in the declaration. Proof of other acts of negligence will not authorize a recovery, unless the jury be satisfied from the evidence that the negligence charged has been proved; or, if several acts of negligence be charged, that one or more of them has been proved, and shown to have occasioned the disaster": while not clear and while properly subject to criticism, was not erroneous taken in the evident meaning of the court, and in the light of the fact that the jury were several times charged that plaintiff could not recover except upon proof of the specific allegations in the declaration.

3, 4. Certain portions of the charge of the court insisted on as erroneous, are not so when taken in connection with the entire charge.

5. The verdict is sustained by the evidence.

6. Plaintiff in error fails to make it appear that the verdict was so excessive as to shock the moral sense; but it appears that, taking one of the rates per cent. laid down in the tables, and adding interest, as the jury had a right to do, the verdict was about right, according to its own calculation.

October 17, 1888.

Practice. Evidence. Railroads. Negligence. Charge of court. Verdict. Before Judge Van Epps. City court of Atlanta. March term, 1888.

Mrs. Georgia Nash sued the railroad company for damages for the homicide of her husband. On the trial she proved that her husband, at the time of his death, was a car-coupler for defendant at $45 per month. They had four children, and he was thirty-eight years old, was sober and industrious, and allowed his family three-fourths of his earnings, using the remainder for his personal expenses. He used little whiskey and tobacco, and his yearly expenses for clothes averaged between sixty and seventy dollars. Six to eight dollars per month would board him. He had just made a coupling at the time he was killed. He gave the engineer the car-length signal, and then stepped

in to make the coupling. The engineer did not notice the signal, and came back so fast that Nash could not get out. The engine was moving four to six miles an hour, rather fast for making a coupling. It was about half-past eleven o'clock at night. The conductor was standing off in the dark. He told Nash to make the coupling. Smith, the regular coupler, had his shoes off and was on the engine. His (Smith's) duty required him to make the coupling. Nash was walking very rapidly; his foot caught in a guard-rail, and he was thrown down and the car ran over him. The stationary car, to which the coupling was being made, was knocked a car's length or more. It had a good brake, which was tight. Nash used every effort to get out.

Other testimony was introduced for the plaintiff, tending to support the above facts. She also introduced mortuary and annuity tables.

The evidence for the defendant tended to show, among other things, the following: It was a clear night, the moon not shining, and Nash and witness each had lanterns. There were five cars attached to the engine, and Nash was attempting to couple them to a car standing in the yard and which was about thirty-five feet long. The Western and Atlantic engine was standing about one hundred feet from the stationary car, and the men constituting its crew were sitting on a platform about the same distance away. The yard conductor told Nash to make the coupling, gave the signal to the engineer, held up his lantern as high as he could (which was the signal for a car's length), and when the train got close, lowered the lantern and motioned the engineer down. The engine came back as slowly as an engine could roll and move at all. After the cars came together, they moved about three feet. The engine

stopped when the cars came together. The cars rolled a few feet, taking up slack. The flange of the car-wheel caught Nash's foot. In place of stepping over the rail, he stepped on it, and his foot slipped between the main rail and the guide-rail. Nothing could have been done by the railroad company to prevent the injury. A man of Nash's age, engaged in car-coupling in Atlanta, could not live there for less than forty dollars a month. Smith was on the engine on account of a sprained ankle. Two couplers, a conductor, engineer and fireman constitute the crew of a switch-engine. The one nearest the cars makes the coupling; the conductor gives orders, etc. Nash and the conductor did the work that Smith would have done.

The engineer swore that he saw the conductor's signal and ran back very slowly, and just did hit the car; that it would have been impossible to have come back more slowly and make the coupling; that after the cars struck, the engine did not move two feet; that the cars moved four or five feet; and that Nash's foot was wedged between the main rail and the guide-rail so tightly that it was crushed to pieces.

The jury found for the plaintiff $5,304. The defendant moved for a new trial on the grounds set out in the decision. This motion was overruled, and the defendant excepted.

JACKSON & JACKSON, for plaintiff in error.

HOKE & BURTON SMITH, *contra.*

SIMMONS, Justice.

Mrs. Nash brought suit against the railroad company for the homicide of her husband. She alleged that her husband, who was a car-coupler in the employment of the defendant, was killed, while engaged in the dis-

charge of his duties, by the negligence and carelessness of the company's servants. The jury returned a verdict for the plaintiff, and the defendant made a motion for a new trial, upon the several grounds set out therein, which was overruled by the court, and it excepted.

1. The first ground alleged, as error, that the court permitted the plaintiff, after she had announced her testimony closed and after the defendant had introduced all of its evidence, to introduce the testimony of several witnesses, all of said testimony being in support of the main case made by the plaintiff on the first examination of witnesses, and not in any sense in rebuttal of the evidence of the defendant.

Under the decisions of this court, an employé who sues a railroad company for injuries, after proving the injury, can recover on proof of either of two facts. After proving the injury, if he proves that he was free from negligence, he can recover ; or if after he proves the injury, he proves that the servants or agents of the company were negligent, he can recover. If he proves that he was not negligent, the law then presumes that the company was negligent, and the burden is shifted upon the company to show that it was not negligent, or to show that the plaintiff was negligent. Proof of either of these facts by the company will prevent a recovery by the plaintiff. In this case, the plaintiff proved the death of her husband, and that he was not negligent, and relied upon that proof for her recovery. The defendant replied by its evidence, but did not attempt to show that the plaintiff's husband was in any way negligent when he was killed, and rested its defence upon the ground that it was not negligent. We think that in this kind of a case, the plaintiff had a right to reply to the defendant's testimony, and to show that it was not true. The plaintiff would have been entitled

to recover on the proof submitted in her opening evidence; the case was fully made out when she closed her testimony; she was not put on notice by the plea of the defendant what its defence was. When, therefore, the defendant did not attack the proof on which she relied to recover, but set up as its defence that it exercised due diligence and was not negligent, she was entitled to reply to that theory of the case by additional testimony; and the court committed no error in allowing her to do so. Besides, it is always within the discretion of the court to allow additional testimony, and it has been so held by this court from its earliest decisions.

2. The second ground complains of the following charge by the court: "The plaintiff is limited to the proof of the particular acts of negligence on the part of the defendant as to the cause of the homicide, which are set out in the declaration. Proof of other acts of negligence will not authorize a recovery, unless the jury be satisfied from the evidence, that the negligence charged has been proved; or if several acts of negligence be charged, that one or more of them has been proved, and shown to have occasioned the disaster."

The defendant objected to the last sentence of this instruction, because, the defendant says, "it instructs the jury that proof of other acts than those charged in the declaration would, under certain circumstances, authorize a recovery." This part of the charge is in the language of the head-note in the case of *The Ga. R. R. vs. Oaks*, 52 *Ga.* 410. While this language is not very clear, (and speaking for myself, I hope no other judge will give it in charge,) it is evident that the meaning of the court was, that the jury must be satisfied from the evidence that the negligence charged in the declaration had been proved, and that proof of other

acts than those set out in the declaration would not authorize a recovery. And this is the meaning as explained by the opinion of Judge McCay in the case just cited. Indeed, the court in the present case several times charged the jury that the plaintiff could not recover except upon proof of the specific allegations in the declaration.

3. The third ground is, that the court erred in charging the jury as follows: "The question of negligence or diligence, as it affects either the plaintiff's husband or the defendant, is a question of fact for the jury to find from the evidence. It is not a question of law. It is not for the court to select from the evidence a state of facts and circumstances, and instruct the jury that the existence of these constitutes negligence, or the absence of them diligence." The defendant insists that the contrary of the proposition embraced in the first two sentences of the above instructions, is the law, to wit: that the question of negligence or diligence, as it affects the plaintiff's husband or the defendant, is a question of law for the court, and not of fact for the jury. The two sentences excepted to, taken by themselves, would seem to be erroneous, but taken in connection with the whole charge upon this subject, are not such error as would authorize this court to reverse the judgment of the court below. The court was charging upon the subject of negligence and diligence, and the whole charge upon this subject shows that he meant to instruct the jury that the existence of negligence and of diligence was for them, and not for the court. Just before these sentences excepted to, the court had instructed the jury that if the engineer failed to take the signal given him by Nash, or if he saw the signal and negligently came back at too great a rate of speed, and this caused the disaster, they should find for the plaintiff; or, if the

defendant was not negligent in refusing to take and obey the signal, or in failing to do so, or in the speed at which the engine came back to make the coupling, the plaintiff could not recover. And immediately after the sentences complained of, the court instructed the jury, in substance, that the court could not state certain facts and tell the jury that they constituted negligence, or that the absence of them constituted diligence. In the next sentence he instructs them that the question of negligence and diligence is to be tested by the jury, under the evidence, and that there is no procrustean rule defining what ordinary care and diligence is ; and that if the defendant exercised ordinary care and diligence at the time of the killing, the plaintiff could not recover ; if it failed to exercise such care and diligence, she was entitled to recover. The whole context of the charge shows that the court meant to tell the jury that they were the judges of whether the defendant was diligent or negligent; that it was not for the court to tell them what diligence or negligence was.

4. The 4th ground complains that the court erred in charging the jury as follows : "If the defendant failed to exercise such care and diligence, in view of the actual situation as disclosed by the evidence, and such negligence occasioned the accident, or contributed to produce it, and Mr. Nash was without fault, his wife would be entitled to recover the full value of his life, that is, the full pecuniary value." The exception to this charge is, that it failed entirely to present to the jury the law contained in sections 2972 and 3034 of the code of 1882, as follows: "If the plaintiff, by ordinary care, could have avoided the consequences to himself, caused by the defendant's negligence, he is not entitled to recover. No person shall recover damage from a railroad company for injury to himself or his property, where the same is

done by his consent, or is caused by his negligence." This complaint is not well-founded. Almost immediately following the words excepted to, the court gave in charge these identical sections of the code.

5. The 5th ground complains that the verdict is contrary to the evidence, to the principles of justice and equity, and is without any evidence to support it. We think the verdict is fully authorized by the evidence.

6. The 6th ground is, that the verdict is so contrary to the evidence and so excessive in amount as to shock the moral sense. The plaintiff in error failed to show us that the verdict was so excessive as to shock the moral sense. In his argument counsel for the plaintiff in error only contended that the verdict was two or three hundred dollars too large, if a certain rate per cent. was used in making the calculation; and taking the other rate per cent. as laid down in the tables, with interest added to the verdict, which the jury had a right to give if they saw proper, the verdict was about right, according to the calculations of counsel for the plaintiff in error. On the other hand, counsel for defendant in error, by his calculation, showed that the verdict was too small. According to this calculation, made, as he claims, upon the basis of the testimony given in the case, the amount should have been between eight and ten thousand dollars. The error not being shown, and the verdict, according to the evidence, not being, in our opinion, so excessive as to shock the moral sense, we decline to grant a new trial upon this ground.

The 7th ground was not insisted on before us.

Judgment affirmed.