WOODWARD *v.* THE STATE.

No. 14703.   NOVEMBER 29, 1943.   REHEARING DENIED DECEMBER 13, 1943.

*Clint W. Hager, J. F. Kemp,* and *Hal Lindsay,* for plaintiff in error.   *T. Grady Head, attorney-general, John A. Boykin, solicitor-general, Durwood T. Pye, E. E. Andrews, E. A. Stephens,* and *L. C. Groves, assistant attorney-general,* contra.

ATKINSON, Justice.   (After stating the foregoing facts.) ■ The first ground of the motion is based on the refusal of the trial court to grant a continuance, the showing therefor being in the

nature of a double-barreled motion, (a) for the reason that counsel and the accused had not had sufficient opportunity to prepare the case for trial, and (b) on account of the absence of certain witnesses. The manner of making the motion was by statements made to the court by counsel for the accused, and by questions propounded to the attorneys by the trial judge.

(*a*) It was contended that counsel and the accused had not had sufficient time and opportunity to contact the material witnesses, as they were widely scattered due to the lapse of time (twenty-four years) since the commission of the alleged crime, and that they should have been allowed to contact the eye-witnesses and procure their testimony. For twenty years following the return of the indictment the accused was roaming over the world, a free man, and for two years preceding the trial he was confined in the Federal Penitentiary in the county in which he was tried, and at the termination of that term he was for thirty days immediately preceding his trial confined in the jail of the county of his trial. If there were witnesses who would testify in his favor it was his duty to exercise diligence in ascertaining their whereabouts, in keeping in touch with them, and in anticipating arrangements for their appearance in court. "The fact that the defendant is imprisoned, is no reason why he should not make preparation for his defence." *Revel* v. *State*, 26 *Ga*. 275 (2). The same rule applies even though the accused was incarcerated in another and distant country. *Long* v. *State*, 38 *Ga*. 491 (3). Nor would the twenty years he was a fugitive from justice relieve him from this rule.

As to the opportunity of the attorneys to prepare for trial, it appears that upon the release of the accused from the Federal Penitentiary, approximately thirty days before the trial in the instant case, he secured the services of three attorneys, two of whom appeared for him at the trial. Another member of his counsel, who subsequently tried the case, stated that he had not been employed until Thursday (April 15) previous to the date of the trial (April 20). The principal reasons urged in support of this ground of the motion were based on the fact that twenty-four years had elapsed since the homicide, and that counsel and the accused had been unable to make the 'kind of investigation they should make; that they had not been able to contact material witnesses, as they were widely scattered, and that "many of the witnesses being as-

64

sociated at the time or [in?] an enterprise which may not have been lawful, are elusive by nature and instinct. However, some of them are available." The record discloses that the case had been previously set for trial on the date it was called, at which time an attorney for the accused was present. There was some dispute between the attorneys for the accused and for the State as to what had previously transpired in reference to the case, which is not necessary to detail here. Not to grant a continuance under this showing was not error. The time to be allowed counsel to prepare for trial is in the sound discretion of the trial judge, and his discretion will not be interfered with by this court, unless abused. *Charlon* v. *State,* 106 *Ga.* 400 (2) (32 S. E. 347) ; *Kelloy* v. *State,* 151 *Ga.* 551 (107 S. E. 488) ; *Harris* v. *State,* 152 *Ga.* 193 (108 S. E. 777) ; *Ivey* v. *State,* 154 *Ga.* 63 (113 S. E. 175).

■ In so far as the motion to continue related to absent witnesses, the showing was made by the statement of counsel as to four absent witnesses only. One appeared and testified. Two were non-residents of the State, and their whereabouts was unknown. The other resided in Savannah, and a certificate from a physician that he was sick and unable to travel was produced. A statement was made as to what was expected to be proved by each witness. This was not a proper showing for continuance on account of an absent witness. The Code, § 81-1410, sets out certain necessary requirements to be met where the motion is based on the ground of an absent witness. Section 27-2002, which also provides for continuance in criminal cases on the ground of an absent witness, states that it may be allowed "upon sufficient cause shown on oath." In the instant case the provisions of these two sections were not met, and the trial judge did not abuse his discretion in overruling the motion to continue. *Trammell* v. *State,* 183 *Ga.* 711 (189 S. E. 529) ; *Mell* v. *State,* 69 *Ga. App.* 302 (25 S. E. 2d, 142). The certificate of a physician is not good evidence of a fact necessary to be proved. *Frain* v. *State,* 40 *Ga.* 529 (6).

■ The second ground of the motion was based on the objection to testimony which was permitted to go to the jury. Mrs. M. B. Anthony testified that when the homicide was committed she and another woman were in a hotel room that opened into the hall where the killing took place; that they saw a part of the transaction, and that the accused knew they had been witnesses. That

within a day or two thereafter he commenced to make daily visits to the home where the two women lived. He permitted the witness and her husband to come and live several weeks free of charge in a hotel operated by the accused, and that he promised to make her husband some money. He also permitted the other woman to go to his hotel, and gave her money, presents, and sent her off on a trip.

While the foregoing is the substance of the evidence objected to on the ground that it was prejudicial, the brief of evidence contains much other testimony of a similar nature indicating an effort of the accused to keep in the good graces of these two women, including evidence that he married the other woman, and was afterwards divorced. It was also shown that two or three days after the homicide both women signed a written statement about the killing, which was more favorable to the accused than the testimony they gave at the trial. Such testimony was proper to go to the jury for their consideration in determining whether or not it was an effort on the part of the accused to suppress the evidence. *Reid* v. *State,* 20 *Ga.* 681 (4); *Georgia Railroad & Banking Co.* v. *Lybrend,* 99 *Ga.* 421, 426 (27 S. E. 794); *Taylor* v. *State,* 135 *Ga.* 622 (3) (70 S. E. 237).

■ The third ground of the motion is based on an objection to the admission of a statement made by the accused in reference to a transaction in Pennsylvania. There was evidence to the effect that the accused and the deceased were jointly engaged in what is commonly known as fake race-horse bets; that a man in Pennsylvania had been swindled out of the sum of $30,000, and that there was a dispute and hard feelings between the accused and the deceased over the claim of the deceased to a part of this fund. Evidence tending to establish a motive for a homicide is admissible, even though it relates to a separate and distinct illegal transaction. *Williams* v. *State,* 152 *Ga.* 498, 521 (110 S. E. 286); *Sligh* v. *State,* 171 *Ga.* 92 (8) (154 S. E. 799); *Wilson* v. *State,* 173 *Ga.* 275 (2) (160 S. E. 319); *Loughridge* v. *State,* 181 *Ga.* 261 (182 S. E. 12); *Cooper* v. *State,* 182 *Ga.* 42 (3) (184 S. E. 716, 104 A. L. R. 1309); *Black* v. *State,* 187 *Ga.* 136 (4) (199 S. E. 810).

■ The fourth ground is based on the refusal of the court to declare a mistrial. Evidence had been introduced to the effect

■

that the homicide took place near the door of room 903, and that shortly before that time loud talking had been heard in that room. H. T. Brown, an Atlanta policeman, testified that some time later that night he and another policeman waited several hours in the room to apprehend the person who occupied the room if he returned. About daylight a man by the name of Mike Holzman unlocked the door, entered the room, and was arrested. At this point the attorney for the accused objected to the testimony on the ground it was not in the presence of the accused. The assistant solicitor-general gave his reasons why the court should admit the testimony. The court then said to the assistant solicitor-general: "To what further extent do you wish to go?" To which he replied: "I want to show that they arrested him and carried him down, and he was released on a hundred-dollar bond the next day." Thereupon the attorney for the accused made a motion for a mistrial, stating: "They have insinuated in front of the jury that there was some corruption practiced by Black Mike (Holzman) on the police, that they took him down, locked him up, and he was released the next day on a hundred-dollar bond." The court properly overruled the motion for mistrial.

There was nothing prejudicial to the accused in the statement made to the court by the assistant solicitor-general. The court rejected the proposed evidence. It was nothing more than a reply to a question by the court as to the extent of the proposed testimony he wanted to produce. The colloquy was between court and counsel, limited to the subject-matter of the admissibility of evidence, and while the evidence was rejected, the statement of the assistant solicitor-general was not inflammable, or injurious to the accused. *Adams* v. *State,* 171 *Ga.* 90 (8) (154 S. E. 700). Before any evidence was introduced the trial judge stated to the jury: "Many times, for convenience, the jury is not sent out, and sometimes counsel make remarks to the court that perhaps should not be made in the presence of the jury, but any remarks of that nature made to me are not evidence and should be disregarded by you." While we do not think the remark of the assistant solicitor-general stating what he expected the witness to testify was improper, still if it had been, the above instructions by the court were sufficient to correct any wrong impression on the minds of the jurors. There are two kinds of improper statements made by counsel in the pres-

ence of the jury: (a) one that can be corrected by the action of the judge, and (b) another where the statement is so inflammatory and prejudicial that its injurious effect cannot be eradicated from the minds of the jurors. For a collection of cases distinguishing these two types, see *Hicks* v. *State,* 196 *Ga.* 671 (2) (27 S. E. 2d, 307). Certainly the remark made in the instant case was not so inflammatory and prejudicial as to fall within the latter type.

■ The fifth ground complains of the failure of the court to declare a mistrial upon another statement made by the assistant solicitor-general in response to an inquiry from the court as to the relevancy of a question propounded by the assistant solicitor-general to a witness. Mrs. Ruth Weaver, one of the women referred to in the second division of this opinion, and the one to whom the accused was married, and from whom he was subsequently divorced, had testified previously that after the homicide and before their marriage, the accused was asked: "Were you afraid about the coroner's inquest?" to which he replied: "No I had the police fixed." Upon cross-examination this witness testified further: "I said he claimed to have the hotel fixed. He had everything in Atlanta fixed. He said he had Mr. Boykin [the solicitor-general of the Atlanta judicial circuit] fixed. He didn't say anything about the grand jury being fixed, but Boykin and all the police, and he could do anything he wanted in Atlanta." Later, upon re-direct examination, the assistant solicitor-general asked the witness: "At the time he told you he had Mr. Boykin fixed, did he tell you about any wrestling matches and what he did?" The witness began to answer: "We would go to prize fights, and he would make me go, and when Mr. Boykin—" Here the court interrupted, and asked the assistant solicitor-general: "What is the relevancy?" to which he replied: "I want to show that he would wait until Mr. Boykin came in, and he would go in behind him in order to make it appear that he was one of his associates." Thereupon counsel for the accused made a motion for mistrial on the ground that the statement of the assistant solicitor-general was prejudicial to the accused. The court did not admit the proffered evidence, and denied the motion for mistrial. There was no error in the refusal to grant a mistrial. The rulings in division four of this opinion are applicable here.

■ The sixth ground alleges error in the admission of a will in

68

evidence. The will was executed at Monrovia, California, on June 28, 1930, and willed the entire estate of the testator to Miss Blanche Hyman Phillips. The will was signed and executed by Thomas C. Thomas. The handwriting of the will was identified as being that of the accused, and the will was found at the time of his arrest at Monrovia in 1940 in the possession of the accused in his office at his home. An objection was interposed to the admission of the will in evidence, on the ground that it was not in rebuttal to the evidence or statement of the accused. The evidence was relevant to rebut that portion of the defendant's statement that he was married about a year after 1928. The will being dated June 28, 1930, and the sole legatee being denominated as Miss Blanche Hyman Phillips, it was proper to submit the evidence for the consideration of the jury, as to whether or not his statement in reference to being married was true. "Where the defendant in a criminal case exercises his right of making a statement not under oath, such statement may be contradicted by testimony as to the facts which it narrates." *Camp* v. *State,* 179 *Ga.* 292 (175 S. E. 646) ; *Johnson* v. *State,* 186 *Ga.* 324 (4) (197 S. E. 786), and cit.

■ The seventh ground is based on the objection to the introduction in evidence of thirteen checks, all drawn in 1935 on the Pasadena Branch, Security First National Bank of Los Angeles, eight for $500 each, and five for $1000 each. One of the $500 checks was payable to B. H. Wheelan, and signed and endorsed by B. H. Wheelan. All the others were payable to A. A. Wheelan, and signed and endorsed by A. A. Wheelan. Also there were two receipts to the same bank, each signed and endorsed "A. A. Wheelan," one for $300; the other for $1000. The handwriting on the checks and receipts was identified as being that of the accused, and there was testimony that these checks were found in the defendant's office in his residence at the time of his arrest in 1940.

The objection to the introduction of this evidence was (a) that it was not in rebuttal, (b) that it sought to show the general bad character of the accused by specific acts, and (c) that it had the effect of putting the general bad character of the accused in issue, though he had not placed his character in issue. The evidence was admissible for the purpose of establishing the fact that the accused was, or had been since the indictment was returned against him,

using an assumed name to conceal his identity; and was relevant for the jury to consider in connection with the law in reference to flight, from which might be drawn an inference of consciousness of guilt. Evidence of flight may be introduced to be considered by the jury in connection with other evidence. For the same purpose the events and circumstances connected with the flight are equally admissible. The accused may explain his flight and show it was consistent with innocence; and in like manner the State may show circumstances connected with the flight which will strengthen its probative value as tending to show the guilt of the accused. The denial of identity of accused is such a circumstance. *Johnson* v. *State,* 120 *Ga.* 135 (47 S. E. 510). Any indication of a consciousness of guilt by a person charged with a crime is admissible in evidence against him. *Grant* v. *State,* 122 *Ga.* 740 (1, 2) (50 S. E. 946); 16 C. J. 553, § 1069; 22 C. J. S. 962, § 627.

The accused also objected to this evidence on the ground that it was not in rebuttal of the evidence or statement of the accused. In determining the admissibility of evidence, the fact that it is not strictly in rebuttal is not the controlling factor. In order to expedite the trial of cases, it is a rule of practice that the plaintiff shall in the opening present all of his evidence which goes to establish his case; the defendant shall then introduce his evidence in support of his defense; and then the plaintiff may offer any proof that rebuts that of the defendant; but if either side should omit to tender in its proper order evidence that is relevant and material, it is a matter in the sound discretion of the trial judge, and his discretion should not be controlled except in a case so gross and palpable as not to admit of hesitation or doubt. *Walker* v. *Walker,* 14 *Ga.* 242 (5); *Choice* v. *State,* 31 *Ga.* 424 (3), 464; *Central Railroad & Banking Co.* v. *Nash,* 81 *Ga.* 580, 585 (7 S. E. 808); *White* v. *State,* 100 *Ga.* 659 (4) (28 S. E. 423); *Frazier* v. *State,* 112 *Ga.* 868 (4) (38 S. E. 349); *Georgia Railroad & Banking Co.* v. *Churchill,* 113 *Ga.* 12 (3) (38 S. E. 336).

The objection to this evidence as placing the character of the accused in evidence, is without merit. There was no evidence concerning the checks and receipts beyond the fact that they were found in his possession, and that they were in his handwriting, and were drawn in a name other than that of the accused. There was no evidence seeking to show the source from which this money

came, or the manner in which it was used. The only effect it could have had was to establish that the accused was using an assumed name, which was proper to show, as has been ruled in this division of the opinion.

■ Under the eighth ground of the motion error is alleged by reason of the court allowing the introduction in evidence by the State of a copy of an indictment charging a crime involving moral turpitude against a witness for the accused, together with a plea of guilty thereon. The objections interposed being (a) that said document was not in rebuttal of anything that had been testified to, and (b) because the document was not competent to impeach the witness, as more than twenty years had elapsed (since the plea of guilty), and by reason of the lapse of time the document had no probative value for impeachment purposes. (a) The evidence was in rebuttal to the testimony of the witness sought to be impeached. (b) Proof of conviction of a crime involving moral turpitude is one of the methods of impeaching a witness. *Georgia Railroad* v. *Homer*, 73 *Ga.* 251 (5); *Doggett* v. *Simms*, 79 *Ga.* 253 (2) (4 S. E. 909); *Ford* v. *State*, 92 *Ga.* 459 (17 S. E. 667); *Coleman* v. *State*, 94 *Ga.* 85 (21 S. E. 124); *Shaw* v. *State*, 102 *Ga.* 660 (8) (29 S. E. 477); *Powell* v. *State*, 122 *Ga.* 571 (50 S. E. 369); *Ivey* v. *State*, 154 *Ga.* 63 (7) (supra). The fact that the plea had been entered more than twenty years previously, would not effect the admissibility of the evidence. As was said in the case of *Doggett* v. *Simms*, supra, "The point made that the moral turpitude was wiped out by lapse of time and by presumptive repentance, is matter of argument to the jury. A court cannot know of such an expurgation judicially, the same being spiritual benefit of clergy, not legal. Old as well as new crimes may affect credit."

■ The ninth ground alleges error in the following charge of the court: "If you believe that the defendant and the deceased bore malice to each other, and that there had been mutual threats to kill, against the other, known to each of them, and that each, with the knowledge of the other, had deliberately procured pistols for the purpose of fighting with them, and had thereupon deliberately fought with the pistols, and under those circumstances the defendant, being quicker than the deceased, fired and killed the deceased, you would be authorized to find the defendant guilty of murder." The accused excepts to this portion of the charge on the ground

that it is not a sound principle of law, and that it was not warranted by the evidence. This portion of the charge is practically identical with the language of the charge excepted to in *Roark* v. *State,* 105 *Ga.* 736 (2) (32 S. E. 125), which is correct in principle. As to the charge being authorized by the evidence, it will appear from an examination of the brief of evidence, that there is ample testimony to cover everything in the foregoing excerpt from the charge with the exception of one thing: there is no clear evidence that the deceased knew about any threat the accused had made against him. So in explaining to the jury the circumstances in which there could be murder in mutual combat, the court included one thing, to wit, that the deceased knew the accused had threatened his life, upon which it is alleged there was no evidence. This being true, the charge was more favorable to the accused than was necessary, as a communicated threat from the accused to the deceased is not a necessary element to constitute mutual combat. *Freeman* v. *State,* 70 *Ga.* 736; *Dorsey* v. *State,* 110 *Ga.* 331 (4) (35 S. E. 651); *Bundrick* v. *State,* 125 *Ga.* 753 (2) (54 S. E. 683); *Cargile* v. *State,* 137 *Ga.* 775 (6) (74 S. E. 621); *Rivers* v. *State,* 193 *Ga.* 133 (17 S. E. 2d, 726). Immediately following the above-quoted excerpt, the court charged the law of mutual combat as related to voluntary manslaughter, differentiating the two grades of homicide growing out of mutual combat. Having fully charged the law of justifiable homicide as based upon the fears of a reasonable man, it was not necessary for the court, in turn, to repeat the law of justifiable homicide in connection with his charge on each other grade of homicide.

In the supplemental brief filed by the accused he insists that the court, in the portion of the charge quoted above, instructed the jury, in effect, that if they believed the defendant and the deceased bore malice to each other they would be authorized to find the defendant guilty of murder. Such an inference could not properly be drawn from the charge, as the court specifically stated: "I instruct you that a man may kill another against whom he entertains malice and yet not be guilty of murder, if he acts in self-defense, or if the killing is otherwise justifiable, and if he acts in self-defense his malice should be disregarded and not taken into account." *Judgment affirmed. All the Justices concur.*