40204. BARTELL v. DEL COOK LUMBER COMPANY.
40205. WALKER v. DEL COOK LUMBER COMPANY.

.Decided November 1, 1963.

594

*George A. Bell, John R. Rogers, Edward Parrish,* for plaintiffs in error.

*Tillman & Brice, B. Lamar Tillman,* contra.

FELTON, Chief Judge. The general grounds of both motions were expressly abandoned. Special ground 1 (of both motions) excepts to the trial judge's refusal to permit the plaintiffs to cross examine in rebuttal the truck driver, Samuel Odom, as agent of the defendant corporation, after both sides had rested, and his ruling that he might be called only as a witness for the plaintiffs.

"In order to expedite the trial of cases, it is a rule of practice that the plaintiff shall in the opening present all of his evidence which goes to establish his case; the defendant shall then introduce his evidence in support of his defense; and then the plaintiff may offer any proof that rebuts that of the defendant; but if either side should omit to tender in its proper order evidence that is relevant and material, it is a matter in the sound discretion of the trial judge, and his discretion should not be controlled except in a case so gross and palpable as not to admit

of hesitation or doubt." *Woodward v. State,* 197 Ga. 60, 69 (28 SE2d 480), and cases cited. Where the evidence introduced by the plaintiff is insufficient to support the essential allegations in the petition and make out a *prima facie* case, a motion for a nonsuit can be properly granted, *Code* § 110-310, and after all the evidence has been presented by both sides, if there is no conflict therein, and that introduced, with all reasonable deductions or inferences therefrom, shall demand a verdict for the defendant, the court may direct a verdict for the defendant. *Code Ann.* § 110-104. From the above it follows that plaintiff here had to make out a *prima facie* case against the defendant before the burden of going forward with the evidence shifted, and *under the facts here* he could not call the defendant's agent for the purpose of cross examination under the provisions of *Code Ann.* § 38-1801 except for rebutting defendant's proof.

The plaintiff's contention as to how the collision occurred is as follows: That the automobile, going in a southerly direction at a speed of approximately 50 m.p.h., rounded a curve and topped a slight hill, being driven in the center of the highway with its bright lights on; that as it came over the hill, the driver encountered the undimmed lights of the truck, which was approaching towards him at a speed of 60 m.p.h. down the center of the highway; that the decedent driver thereupon lowered his own lights and moved over into his own right-hand lane, but the truck did not dim his lights nor move over into his own lane until the vehicles were less than 500 feet apart; that, his vision blinded by the truck's lights, the decedent did what seemed best under the circumstances, i.e., he held the steering wheel steady and applied his brakes, causing the vehicle to go into a straight skid down its own lane; that the automobile's single skid mark was laid down by its left-hand wheel, the brakes on which held better than those on the right, which fact finally caused the automobile to veer to the left for the last ten feet and to cross the center line and into the truck's lane, wherein the point of impact was located; that the last 10 feet of the mark, which was smudged in appearance, was caused by a wheel slipping sideways before the collision; that the truck, at the time of the collision, was

situated diagonally across the highway in a northeasterly direction because of its driver's belated attempt to get back into his own lane; that the collision was caused by the defendant's driver creating an emergency situation by failing to dim his lights, reduce his speed and move over on his own side of the highway.

The defendant's version of the collision was as follows: That the decedent automobile driver had been traveling at the rate of 75 m.p.h., straddling the center line of the highway, and under the influence of alcohol, in an automobile with defective brakes; that the automobile topped the hill at this speed and straddling the center line and, upon seeing the truck approaching, the decedent driver applied his brakes; that the right rear automobile wheel brake held better, causing the single skid mark on the automobile's side, which would have placed the automobile's left side 3½ feet over in the truck's lane; that the 10 foot smudged mark was laid down after the impact, rather than before it as contended by the plaintiffs; that the point of impact was located on the truck's side at a point even with the place at which the automobile's even skid mark ended.

Since a picture is worth a thousand words, perhaps the diagram, on the opposite page, of the highway at the vicinity of the collision will be helpful in visualizing the situation.

The following evidence was adduced by the plaintiffs in the trial of the case: The decedent driver had one daytime job, one nighttime job and another one on the weekend. The collision took place at 3 a.m., after he had gotten off from having worked on both the day and night jobs. The decedent stopped to get a fifth of whiskey, purportedly for his father, before leaving Atlanta.. The report of the investigating patrolman said "obviously drunk" and "ability impaired.". The plaintiff guest passenger, the only witness present at the scene of the collision to testify, had had a beer before leaving on the trip and for some minutes before the collision he had been looking out the side window. He testified that the driver usually drove around 50 m.p.h. and that the old car wouldn't go 65 m.p.h., but that since he hadn't looked at the speedometer he couldn't say how fast they were going at that time; that in about 2½ hours of driving time they had gone about 165 miles; that the automobile was on the right side several

minutes prior to the collision, but that since he was not looking forward at the time he didn't know which side either vehicle was on and when he looked up when the brakes were applied all he could see was "the bright light" in front of him, then the car started spinning and he didn't have time to "visualize" anything; that the decedent driver had "nothing on his breath" (the witness, it will be remembered, having had a beer himself) and had nothing to drink *while he was with him;* that he had been told that there were beer cans in the automobile, although he hadn't seen them; that the automobile had just rounded a curve and topped a hill before the collision; that he didn't know what happened to the decedent's fifth after the wreck; that the seals on the two whiskey bottles were not broken prior to the wreck. Sam Ball, a land surveyor, testified that all of the truck's two skid marks were on its own side, no closer than 2 feet to the center line; that although he could "imagine" a line from the

truck's skid marks projected back to the center line, he could not actually see one; that if the collision occurred at the southern end of the truck's skid marks the automobile's skid mark would have had to be caused by its right-hand wheel, since the marks were too far apart for a collision to have occurred there if it were the left-hand wheel. Sheriff Alex Storey testified that in his opinion the point of impact was at the center line, at the extreme end of the automobile's smudged tire marks. He based this conclusion upon his opinion that the automobile's skid mark was laid down by the left-hand rear tire because if the right-hand tire had held it would have pulled the automobile to the right, and because if the automobile's mark were made by a right-hand tire, in his opinion the collision would have been head-on, rather than a side swipe, *if the collision occurred at the center line,* as he believed, rather than at the end of the automobile's even tire mark. He also testified that the truck's brakes were applied "a few feet below [beyond] the impact." Sheriff D. S. Hudson also testified that he believed the automobile's mark to have been laid down by the left-hand wheel, basing this conclusion, as did Sheriff Storey, upon the hypothesis that the collision occurred at the center line and the end of the automobile's *skidding* marks, rather than at the end of its *braking* marks. He testified that he didn't know that the car was not over the center line and that it could have been a right tire mark, although he didn't see how it could have been a right tire, since that would have caused a head-on collision. Cook County Sheriff, C. A. Vittum, testified that although the veering of the mark towards the left indicated to him that it was probably made by the left-hand rear tire, he couldn't say that the smudged marks showed that a tire was slipping sideways and that the rough mark could have been caused by being knocked one way or another. Willard B. Smith, service manager and mechanic of a Chevrolet company, testified that one wouldn't definitely know which wheel caused the mark without there being another mark, but that a *normal* brake pulls the automobile towards the side having the most brake traction and therefore the veering to the left seemed to indicate the left wheel held; that the mark being straight indicated that it was a rear wheel; that the smudged looking automobile skid marks

at the end were made by partial sliding, possibly the rear wheel having held and the front tire having been cut to one side; that, although if the mark were laid down by a right tire the mark would skid away from the center line (towards the automobile's lane), when a light automobile strikes a heavy truck with enough force to spin the automobile, its back tires normally come clean up off the pavement, so that the front wheel could have made the sliding mark. The funeral director who helped embalm the decedent's body testified by deposition that he had not detected any alcohol either on or about the body or in the blood; that if a person has drunk a great amount he could tell it when he works on him, but if he had been drinking just a little bit he might not be able to tell; that he could detect, and had detected, the presence of alcohol on bodies by the smell in the blood as well as in the mouth; that he had been a licensed funeral director for 6 or 7 years but was not a licensed embalmer; that he had worked in that funeral home since 1927 and had embalmed about 200 bodies.

The above evidence, together with the pleadings, was not sufficient to make out a *prima facie* case for the plaintiffs. The petitions allege that the point of impact was to the left and east, or the truck's side of the center line. The plaintiffs introduced evidence which attempted to prove that the point of impact was near the center line, rather than across it, as was alleged. "A party to a suit will not be allowed to disprove an admission made in his pleadings, without withdrawing it from the record." *Florida Yellow Pine Co. v. Flint River &c. Co.*, 140 Ga. 321 (2) (78 SE 900); *Grigsby v. Fleming*, 96 Ga. App. 664, 665 (101 SE2d 217). The plaintiffs attempted to justify the fact that the automobile was on the wrong side of the highway (as was alleged), or at least at the center line (as they attempted to prove) by alleging that an emergency situation was created by the defendant's driver's speed, failure to dim his lights and failure to move over to his right side. The evidence fails to prove any of the negligence charged. There is no evidence as to the truck's speed. The only evidence as to the undimmed truck headlights was the passenger's testimony that at the last minute he looked up and saw "the bright light" in front of him. "The bright light" is not enough to authorize a finding that they were the undimmed

lights; any lights may have appeared bright to the witness, who immediately prior thereto had been looking out the side window into the 3 a.m. darkness. The evidence as to the defendant's truck's having been too far over on the wrong lane was likewise weak. It was based on the hypothesis that the automobile's skid mark was laid down by its left-hand wheel and that, since the mark, hence the automobile, was within the right lane, the truck must have been outside its own lane. This conclusion was in turn chiefly based upon two other premises, i.e., that if the right wheel had held, the automobile would have been pulled to the right instead of to the left and that the collision would have been head-on rather than side-swiping. With regard to the first premise, the petition alleged that the automobile, as it rounded the curve and topped the hill, was driving down the center of the highway. The petition and the evidence together could reasonably support the theory that the momentum of the automobile as it rounded the curve, admittedly in the center of the highway, could have prevented it from ever getting back over into its own lane, the pull of the momentum towards the left counterbalancing and overcoming any pull to the right which might have been exerted by the braking action on a right wheel or wheels. The evidence showed that the automobile's single skid mark was in a straight line headed toward the center line, excluding about the last 10 feet of smudged marks, about which there was testimony that they could have been caused by the front tire skidding when the rear end was lifted by the force of the collision. There is no evidence which shows why the decedent driver, had he been on his own side of the highway, could not have pulled over to his own right-hand side of the highway, or even off the paved portion to avoid the collision instead of merely holding the automobile on a collision course with the truck. The fact of the automobile's skidding alone does not necessitate a finding that the defendant's driver was negligent or that his negligence, if any had existed, was the proximate cause of the collision. The theory that the decedent driver was on the wrong side himself and was attempting to stop in order to avoid a collision in the truck's lane is an equally or more plausible one, and could easily be predicated upon the evidence introduced by the plaintiff even without con-

sidering the defendant's evidence. It is supported by the testimony and exhibits which show that none of the truck's skid marks were on the wrong side. The testimony that a line might be "imagined" to be projected back to the center line was mere speculation, hence not sufficient to show that the truck had actually been across the line. None of the so-called expert witnesses who testified that the automobile's single tire mark was made by the left tire were in fact more expert in interpreting the photographs of the marks, on which their opinions were based, than the jurors themselves. The second premise, i.e., that if the mark was made by the right tire the collision would have been head-on rather than side-swiping, is equally ill founded. There was evidence that the truck's brakes were applied *after* the impact, therefore it was not shown how far over the center line the automobile would have had to go in order to collide head-on at the point of impact contended for by the plaintiffs, namely at the south end of the automobile's smudged marks.

Where circumstantial evidence points equally to two opposing theories, one consistent with liability and the other not, the party having the burden of proof fails to show a case of liability. *Collins v. Phillips,* 99 Ga. App. 13 (107 SE2d 275), citing *Camp v. Emory University,* 95 Ga. App. 442 (98 SE2d 66) and cases cited. "When the party upon whom the burden of an issue seeks to carry it, not by direct proof, but by inferences, he has not, in this reasonable sense, submitted any evidence for a jury's decision, until the circumstances he places in proof tend in some proximate degree to establish the conclusion he claims; and for this, the facts shown must not only reasonably support that conclusion but also render less probable all inconsistent conclusions." *Georgia R. &c. Co. v. Harris,* 1 Ga. App. 714, 717 (57 SE 1076); *Camp v. Emory University,* supra, (2). "So where evidence is not more than a scintilla, if it is dependent entirely upon guess or speculation, it is insufficient to support a verdict. *Bentley v. Southern R. Co.,* 52 Ga. App. 188, 190 (2) (182 SE 815)." *Ladson Motor Co. v. Croft,* 212 Ga. 275, 277 (92 SE2d 103). The plaintiffs' evidence here depended on the remotest and most speculative conjecture, hence was not sufficient to make out a *prima facie* case.

The truck driver could have been called as a witness for the plaintiffs during the presentation of their evidence in chief as a matter of right. The matter of whether or not he could be called upon to testify for the purpose of cross examination in rebuttal after both sides had rested, however, was within the sound discretion of the judge. The plaintiffs, having failed to make out a *prima facie* case in the first instance by proving negligence of the defendant which was the proximate cause of the collision, could not use this purely rebuttal evidence to supplement their evidence in chief in order to make out their *prima facie* case, regardless of what the prospective witness might have testified. It follows that the judge did not abuse his discretion in refusing to permit the plaintiffs to call Odom as a witness. Since no *prima facie* case was established, the errors assigned on the judge's charge and on a question permitted to be asked on cross examination could not have affected the outcome and hence were not grounds for reversal. Of course *a plaintiff is entitled* to call the opposite party, his agent, etc., for cross examination *in chief* to make out a prima facie case.

*Judgments affirmed. Eberhardt and Russell, JJ., concur.*