## 29419. PREVATTE v. THE STATE.
## 29420. JORDAN v. THE STATE.

HALL, Justice.

Appellants were charged in two counts with the March 6, 1974, armed robbery and murder of James Addison Rouse, Jr. At separate trials, both were convicted and sentenced to death on each count.

The victim, Rouse, was an assistant principal of East Atlanta High School. On the day of the murder, Wednesday, March 6, he drove to work in his 1973 blue Toyota station wagon, wearing a wristwatch and carrying a grey briefcase. Though he telephoned his wife at about 8:00 p.m. that evening, he was last seen alive at about 7:30 p.m. at the Holiday Inn Motel located at the Suwanee exit from interstate highway I-85. He was identified by the bar manager of the Inn, who testified that Rouse left the bar near the time appellants entered. Appellants were also identified by the bar manager, who recognized Jordan by his "teased hair" and Prevatte by the mole on his face.

Appellants were arrested together on Thursday afternoon, March 7, by sheriff's deputies in Anson County, North Carolina, after a high speed chase during which appellants fired upon the deputies and threw a sawed-off shotgun from their vehicle. They were driving Rouse's blue Toyota and in the car was Rouse's briefcase, a polaroid camera, two polaroid pictures (one of each appellant holding the sawed-off shotgun and a pistol in front of Rouse's automobile), two black bags and other shotgun shells. Jordan was wearing Rouse's watch. Appellants explained the photographs as "just clowning around" and as a "souvenir."

Rouse's body was discovered on the following Saturday afternoon, March 9, 1974, at a lake in Gwinnett County, Georgia, about one and one-half miles from the Holiday Inn. An autopsy revealed "a close range shotgun wound to the back of the head which completely disintegrated the head," causing his death at a time approximately between 9:00 and 10:00 p.m., March 6th. A shotgun shell, found 14 feet from the body, was identified

as having been fired from the sawed-off shotgun earlier found in the possession of Prevatte and Jordan.

Each testified for the other at his trial, both testifying that they knew nothing of the killing and had merely found Rouse's automobile abandoned in Atlanta, stolen it, and driven to North Carolina where they were apprehended.

Following their convictions and sentences to death, appellants bring this consolidated appeal.

1. Appellants' enumeration of error on the general grounds is without merit considering the evidence recited above, which we hold adequate to convict them of murder and armed robbery.

2. It was not error to admit in evidence photographs of the victim showing wounds inflicted upon him and his condition at the scene where his body was found. *Lingerfelt v. State,* 231 Ga. 354 (201 SE2d 445); *Henderson v. State,* 227 Ga. 68, 79 (179 SE2d 76). Also there was no error in allowing this evidence to be taken into the jury room and to remain with the jury during its deliberation. *Walker v. State,* 216 Ga. 15 (114 SE2d 431).

3. The trial court did not abuse its discretion in Jordan's case by allowing a state's witness (Detective Bishop) to remain in the courtroom following the sequestration of all other witnesses. *McNeal v. State,* 228 Ga. 633 (187 SE2d 271).

4. The attack upon the constitutionality of the 1973 death penalty procedure (Ga. L. 1973, p. 159) is without merit. *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 570); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12); *House v. State,* 232 Ga. 140 (205 SE2d 217); *Coley v. State,* 231 Ga. 829 (204 SE2d 612).

5. Prevatte contends that the testimony of Blankenship was improperly admitted by the trial court during the pre-sentence phase of his trial under Code Ann. § 27-2534 in that inadequate notice of this testimony was given by the state. We disagree. There was no error in allowing it as rebuttal evidence. See *Eberheart,* 232 Ga., supra, p. 253.

6. At both Prevatte's and Jordan's pre-sentence hearings, the district attorney, addressing the trial court

in the presence of the jury, made the following statement: "Your Honor please, the other, the fifth thing is that the trial court, yourself, your Honor, you have the right even if the jury should recommend death of your own accord to reduce it to a life sentence if you saw fit. Sixth, there is now an automatic appeal which provides that the case go to the Supreme Court of Georgia, where they consider not only the evidence of guilt, but whether or not the evidence in that case warrants the death sentence, they, of their own accord, from reading the record have the right and they have already done so in one particular case, to set aside the death sentence and set a life sentence for the offense of murder." No objection to this statement was made in the trial court. Appellants assert that the above statement was prejudicial in that it would tend to influence the jury to act without exercising reasonable caution and deliberation, and to shift the responsibility for an erroneous sentence, and for the correction thereof, to other tribunals. We will rule upon this contention even though there was no objection in the trial court, because under the mandate of the death penalty procedure (Code Ann. § 27-2537 (c 1)) this court must determine "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor."

Generally speaking, though it is the function of the prosecutor to prosecute and to perform his role as advocate, "[t]he prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, . . . by making predictions of the consequences of the jury's verdict." American Bar Association Standards for Criminal Justice, 5.8 (d). We find a violation of this precept in the instant case, in that the inevitable effect of the prosecutor's remarks to the judge in the jury's presence was to encourage the jury to attach diminished consequence to their verdict, and to take less than full responsibility for their awesome task of determining life or death for the prisoners before them.

In *Hammond v. State,* 156 Ga. 880, 883 (120 SE 539), this court considered the following statement made by the prosecutor to the jury: "If the State has not made out a case, and they convict this man and the evidence does not authorize it, nobody will set it aside quicker than the

judge, and if refused may be appealed to the Supreme Court. If he should be turned loose, it was at an end." This court wrote, "We are of the opinion that argument of this kind should not have been employed. It tended to lessen the sense of the peculiar and sole responsibility resting on the jury... The suggestion that if they should convict him, and the evidence did not authorize it, the judge would set it aside, should not have been made..." Three Justices of the court were of the opinion that this statement was prejudicial and required a new trial. The other three Justices also disapproved the statement but did not consider whether it required a new trial since the same had been granted upon other grounds. Much earlier, in 1848, considering a similar problem posed by remarks of a trial judge, Justice Lumpkin wrote: "We think, too, that the remark which fell from the court, reminding the jury of the existence of an appellate tribunal, to which the case with which they were then charged might be carried up, if the evidence offered by the prisoner had been wrongfully withheld — however well intentioned, was calculated, nevertheless, to lessen their sense of their own re- sponsibility..." *Monroe v. State,* 5 Ga. 85, 139. Cf. *Cash v. State,* 231 Ga. 285 (201 SE2d 625).

Though authority in our state is scant, the rule in numerous other jurisdictions is that such statements constitute prejudicial error in cases in which a verdict of guilty exposes the accused to the death penalty. Where one of the jury's functions is to impose punishment for crime, a reference by the prosecutor to the defendant's right to appeal is more likely to be considered reversible error if a death penalty is subsequently imposed, no doubt for the reason that in the weighing of imponderables it cannot be concluded that the jury were not influenced by such statements to impose more severe punishment than their unbiased judgment would have given. E.g., Pait v. State, 112 S2d 380 (Fla. 1959); State v. Hawley, 229 N. C. 167 (48 SE2d 35) (1948); People v. Johnson, 284 N. Y. 182 (30 NE2d 465) (1940); Blackwell v. State, 76 Fla. 124 (79 S 731, 1 ALR 502) (1918). Cf. State v. Woodward, 21 Ariz. App. 133 (516 P2d 589) (1973). See also 75 AmJur2d 309, Trial, § 230.

The two sentences of death for murder and the two

sentences of death for armed robbery are set aside and a new trial is ordered on the issue of punishment for these offenses. E.g., *Cash v. State,* 231 Ga. 285 (201 SE2d 625); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659).

*Judgments affirmed as to the convictions; reversed as to the sentences. All the Justices concur, except Ingram, J., who concurs specially in Division 5, and Gunter, J., who dissents from Divisions 4 and 5 and from the judgment.*

ARGUED JANUARY 16, 1975 — DECIDED FEBRUARY 25, 1975 — REHEARING DENIED MARCH 12, 1975.

*Bishop & Sexton, Fred A. Bishop, Jr., E. L. Owens,* for appellants.

*Bryant Huff, District Attorney, Dawson Jackson, Assistant District Attorney, Arthur K. Bolton, Attorney General, Lois F. Oakley,* for appellee.