## 31082. HILL v. THE STATE.

JORDAN, Justice.

Charles Harris Hill, the appellant, James Brown, Jr., and Gary Watts, were indicted for the murder and robbery of Elmo Pressley on April 6, 1975. The appellant was tried separately, convicted, and after finding statutory aggravating circumstances, the jury recommended the death penalty. He is before this court on appeal and for mandatory review of the death penalty imposed.

The evidence shows that in the late night of April 5, 1975, or early morning of April 6, 1975, Elmo Pressley was robbed and murdered in his home on Glenwood Avenue in Atlanta, Georgia.

Watts and Brown were playing cards until around 11:00 p.m. on April 5, 1975, when they were joined by appellant Hill. After drinking a bottle of wine they decided to break into the victim's home.

The appellant, Watts, and Brown, then started walking toward the house on Glenwood Avenue. On their arrival at the house, the appellant walked onto the porch and knocked at the door. Later, Brown walked onto the porch, looked through a window and discovered that someone was in the house. He informed the appellant and Watts, and the three men left the house and walked down to the street. The appellant said, "wait" and suggested that they go back to the house.

The appellant went back to the house. He decided to break the door in and signaled Brown to help him. Brown refused. Appellant then broke the door in by himself. The appellant, Brown and Watts then entered the house and surprised the victim. Brown held the victim down on a couch in the living room while the appellant and Watts moved through the house. The appellant indicated that he wanted to harm the victim but Brown pleaded with him not to harm the victim and suggested that the victim be

tied instead. Realizing that the appellant intended to harm him, the victim begged Brown to protect him. The appellant insisted on beating the victim and grabbed the victim and struck him. The appellant faced Watts and pointed his thumbs downward, apparently indicating that the victim should be killed.

The appellant and Watts rummaged through the house searching for items to steal. Brown was left alone with the victim. The victim told Brown that he did not have any money, but they could take anything from the house they wanted. Brown examined the victim's wallet and found no money. The appellant then returned with his knife in hand and stood behind Brown directly over the head of the victim. The appellant then tried to cut the victim but Brown prevented him from doing so.

The appellant left the room and returned with his thumbs downward and said, "We got to kill, you know." A fight for control of the knife followed. Eventually, the appellant got control of the knife and tried to cut the victim.

Brown then pleaded with the appellant and Watts not to harm the victim. He told them that the victim had already told him that they could take any of the victim's property. The appellant and Watts then ran through the house collecting a TV set and stereo equipment belonging to the victim. During this time, the victim requested Brown to let him take a full breath of air. Brown agreed. The victim made two more similar requests and Brown agreed twice more; however, when the victim took his third full breath of air he and Brown saw blood on the pillow where the victim's head rested.

The victim became frightened and ran into a bedroom of his home. Shortly afterwards, the appellant came out of the bedroom into which the victim had run. Brown then walked to the bedroom and saw the victim lying still in a sea of blood. Brown also saw Watts rising from a kneeling position and throwing a knife down as he rose.

The trio fled when the victim's wife and stepson arrived at the home. They ran to Watts' home. They arrived there at about 1 a.m. on the sixth of April. Watts' mother permitted the appellant to clean himself at her

home and prepared a place for him to sleep for the night.

An autopsy of the victim's body revealed the cause of death was a knife wound on the right side of the neck extending some six inches from the center of the neck to the right ear of the victim. The knife wound varied in depth from three-fourths of an inch to one inch. The blood vessels on the right side of the victim's neck were cut open. The victim had suffered multiple wounds including facial bone fractures, inner cranial bleeding, nasal wound fractures and auxiliary wounds. The victim also sustained bruises beneath his skin and the right temple area. Numerous other wounds were detected also.

The defense presented evidence to the following effect:

Betty Daniel testified she was employed by the Atlanta Police Department, and she knew the appellant. She testified that the appellant stayed at her house the entire night in question.

The appellant testified and corroborated Betty Daniel's testimony concerning his alibi of being with her. The appellant further testified that he had been to the victim's house earlier on the 5th of April, 1975. Appellant further stated that he had left his sunglasses (found at the scene) at the victim's house on that visit. He denied being with the co-defendants that night or having anything to do with the murder and robbery.

1. The appellant alleges the trial court erred in failing to charge without request on circumstantial evidence.

There was direct evidence relating to the body of the victim and the nature of the wounds causing his death, the concerted action of the appellant and his accomplices, disarray at the scene of the crimes, the death weapon and full and complete testimony by one of the accomplices that the crimes were committed within the course of their conspiracy and the part played by the appellant therein. There being direct evidence connecting the appellant with the crime, the court did not err in failing to charge on circumstantial evidence. *House v. State,* 232 Ga. 140, 146 (205 SE2d 217) (1974) and cases cited therein.

2. In enumeration two the appellant alleges the trial court erred in not giving a correct and complete charge on

corroboration required of a co-defendant's testimony, and in enumeration eleven that the trial court failed to charge that testimony of a co-defendant should be viewed with great skepticism and caution.

In his charge to the jury after instruction on conspiracy the trial court clearly instructed the jury that "the state had put up evidence of a co-defendant. I charge you that you may not convict on the bare testimony of a co-defendant alone," and "that the question of corroboration is a matter entirely for you jurors to determine, the question of whether or not there is sufficient corroboration to corroborate the testimony of the co-defendant."

The appellant had not requested instructions on this subject nor did he make any objection to the instruction given.

The court having correctly instructed on the necessity for corroboration of testimony of an accomplice, it is not ground for a new trial that the court failed, in the absence of a request, to further charge that it was not sufficient that the accomplice was corroborated as to the corpus delicti when such facts did not show any connection of accused with the commission of the offense. *Cantrell v. State,* 141 Ga. 98 (80 SE 649) (1913). There was sufficient evidence in this case to comply with Code Ann. § 38-121 and to justify the jury in finding that the testimony of the accomplice was corroborated by independent evidence tending to connect the accused with the crime or leading to an inference that the accused is guilty in that the evidence goes beyond merely casting a grave suspicion of guilt on the accused. *West v. State,* 232 Ga. 861 (209 SE2d 195) (1974). Slight evidence from another source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support the verdict. *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976). See also *Slocum v. State,* 230 Ga. 762 (199 SE2d 202) (1973).

As we view the evidence, the testimony of a disinterested witness placing the accused with the testifying co-defendant prior to the crime, other testimony that three men of the same race were seen fleeing the scene, the presence of the appellant's sunglasses at the

scence of the crime, for which the appellant's explanation was apparently rejected by the jury, was sufficient to connect the appellant with the crime as a participant in it.

These enumerations are without merit.

3. In enumerations 3 and 14 the appellant alleges that the trial court in its charge shifted the burden of proof as to alibi upon the defendant.

The portion of the trial court's charge concerning alibi was as follows:

"I charge you, Ladies and Gentlemen of the jury, that one of the defenses raised by the defendant is that defense of alibi. I charge you that alibi involves the impossibility of the accused's presence at the scene of the offense at the time of its commission. Any evidence whatsoever of alibi is to be considered on the general case with the rest of the testimony.

"Ladies and Gentlemen, if you believe that the contentions of the defendant that he was not there, that he did not have anything to do with this case, that he was instead with Betty Daniel, it would be your duty to acquit. On the other hand, Ladies and Gentlemen, if your believe under the instructions that I have given you, and you believe beyond a reasonable doubt based on the evidence that the defendant, Charles Harris Hill, did in the County of DeKalb, State of Georgia, any time prior to the return of this bill of indictment, and did with malice aforethought kill, murder, and cause the death of Elmo Pressley, a human being by cutting him with a knife, or aided, abetted, and assisted anyone in doing that, then you would be authorized to convict as to Count One of this indictment.

"If you do not believe him guilty, or if you entertain a reasonable doubt as to his guilt, it would be your duty to acquit."

Subsequently, the trial court again charged "If you entertain a reasonable doubt as to the guilt of the defendant as to either counts one or two, the form of your verdict in either case would be: " 'We, the Jury, find the defendant not guilty of Count One, or not guilty of Count Two.' "

While this charge is not in the exact words of the charge approved in *Patterson v. State,* 233 Ga. 724 (213

SE2d 612) (1975), it cannot be said that the charge as given shifted the burden to the appellant of establishing his alibi. No mention was made of "burden of proof" or that "Alibi as a defense should be established to the reasonable satisfaction of the jury, and not beyond a reasonable doubt." No burden whatsoever was placed on the appellant concerning his defense of alibi.

4. In enumeration four the appellant alleges the trial court expressed an opinion of guilt and removed an essential part of the fact finding process from the jury when it stated that one of the state's witnesses, in fact a co-defendant, was a co-conspirator with appellant.

In the course of explaining to a co-defendant, James Brown, the trial court stated: "You are a co-conspirator with Charles Harris Hill. Do you understand that?" Code Ann. § 81-1104 forbids any expression of opinion by the trial judge as to what has or has not been proven. *Wilson v. State,* 229 Ga. 224 (190 SE2d 78) (1972). However, in the absence of any objection or motion for mistrial in the trial court, the appellant may not raise this issue for the first time on appeal. *Spencer v. State,* 231 Ga. 705 (203 SE2d 856) (1974); *Waters v. State,* 237 Ga. 64 (226 SE2d 596) (1976).

5. In enumeration 6 the appellant alleges the trial court erroneously charged on the greater offense of armed robbery.

Although he cites no authority for his position the thrust of the appellant's position here is that by so charging the trial court expressed an opinion as to a greater crime and the emphasizing of an offensive weapon.

An appellant is required to show injury as a result of the alleged error. *Coker v. State,* 234 Ga. 555 (216 SE2d 782) (1975) and *Henderson v. State,* 134 Ga. App. 898 (216 SE2d 696) (1975). The trial judge instructed on all types of robbery and no harm has been shown by the appellant since he has been convicted of robbery and not armed robbery. Additionally the issue of punishment was submitted to the jury after conviction on the offense of murder only. No resulting harm to the appellant is shown.

6. In enumeration 7 the appellant alleges that the record does not reflect if the jury was lawfully sworn as

required by law.

Code Ann. § 59-709 specifies the oath that shall be administered to the petit jury in all criminal cases.

The transcript reveals a reporter's note to the effect that each panel of prospective jurors was sworn and that the petit jury finally selected was sworn prior to their service in the case.

We find no statutory or judicial requirement that the oath of any juror be set forth verbatim. We note that the same procedure was used and is customarily used whenever a witness testifies. A reporter's note is made that the witness was sworn.

Whether the oath administered to the jury was proper is not alleged by the appellant or before this court. See *Smith v. State,* 63 Ga. 168 (1879); *Slaughter v. State,* 100 Ga. 323 (28 SE 159) (1897). Nor does the appellant allege that the jury was not in fact sworn.

We find no merit in this enumeration.

7. The appellant alleges in enumeration 8 that the verdict is contrary to the evidence and the law.

The summary of the evidence presented above, which by no means details all of the evidence presented, clearly contains ample evidence to support the verdict of the jury.

8. The appellant alleges in enumeration 9 that after the rule of sequestration was invoked by the defendant, the trial court erred in allowing Detective Dorsey to remain in the courtroom and after hearing testimony, allowing him to testify.

The district attorney requested permission to allow Detective Dorsey to remain in the courtroom and assist the prosecution and indicated that he would call Detective Dorsey as his first witness. The trial court exercised its discretion and permitted Detective Dorsey to remain in the courtroom. Detective Dorsey testified as a witness but was later recalled to testify without objection by the defense.

It is not error to allow the prosecuting witness to remain in the courtroom. It is a matter within the discretion of the trial court. *Jarrell v. State,* 234 Ga. 410, 420 (216 SE2d 258) (1975); *Prevatte v. State,* 233 Ga. 929, 930 (214 SE2d 365) (1975).

We find no abuse of discretion in this case.

9. In enumeration 10 the appellant alleges the trial court improperly charged the jury that if they found the defendant "guilty of either charge" they would decide the punishment, which is contrary to the law because the defendant was charged in count two with robbery, which is not punishable by death. In enumeration 12 the appellant alleges the trial court improperly charged the jury that should they find the defendant guilty of "either charge," it would be their duty to come back and receive more evidence before deciding punishment, thus inferring to the jury that there was additional incriminatory evidence which was not before them at that time and which would only be before them after they found the appellant guilty.

We find here no more than an explanation of the bifurcated trial system to assure that the jury did not believe they had a sentence function concurrently with their duty to make a finding of guilt or innocence. The robbery charged was not armed robbery (a capital offense) and the trial court did not submit sentencing on that count to the jury during the sentencing phase. See *Shepherd v. State,* 234 Ga. 75 (4) (214 SE2d 535) (1975).

Enumerations 10 and 12 are without merit.

10. In enumeration 13 the appellant alleges that the death penalty and the statute from which it is taken are unconstitutional. This contention is without merit.

*Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974) and Gregg v. Georgia, — U. S. — (96 SC 2909, 49 LE2d 859) (1976).

11. While the appellant has offered no authority for certain other enumerations we have reviewed all of the remaining enumerations and find them to be without merit. We have also considered the contentions of the appellant contained in a "pro se" brief with seventeen enumerations of error, some of which are repetitions of the enumerations filed by appellant's counsel and addressed above. We have examined this pro se brief in detail and find each of the appellant's allegations to be without merit.

*Sentence Review*

In our sentence review we have considered the aggravating circumstances found by the jury and the

evidence concerning the crime introduced in court.

We have reviewed the sentence as required by Ga. L. 1973, p. 159, et seq. (Code Ann. § 27-2537 (c) (1-3)), as we did in *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974) and in each subsequent case involving a death penalty under this statute. We conclude that the sentence of death imposed on Charles Harris Hill was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

The jury found the following aggravating circumstances: 1. The offense of murder was committed by a person who has a substantial history of serious assaultive criminal convictions (Code Ann. § 27-2534.1 (b) (1)) and; 2. The offense of murder (was) outrageously and wantonly vile, horrible, and inhuman to the victim. Code Ann. § 27-2534.1 (b) (7).

In *Arnold v. State,* 236 Ga. 534 (224 SE2d 386) (1976) we held that the portion of Code Ann. § 27-2534.1 (b) (1) which allows the death penalty where a "Murder [is] committed by a person who has a substantial history of serious assaultive convictions," is unconstitutional and, thereby, unenforceable. We do not therefore consider aggravating circumstance number one found by the jury.

We do believe the evidence supports the jury's finding of aggravating circumstance number two found by the jury, viz., the offense of murder (was) outrageously and wantonly vile, horrible, and inhuman to the victim. See *Harris v. State,* 237 Ga. 718 (1976) for a discussion of the constitutionality of this statutory aggravating circumstance. There is evidence that the victim, who was asleep when the appellant broke down the door to his home, was held down on his couch, viciously beaten and stabbed while his home was being looted and subsequently had his throat cut in another room of his home where he had sought refuge. We believe that this case also lies at the core of the aggravating circumstance and is in line with previous death penalty cases where this court has upheld the jury's finding under this aggravating circumstance.

We have compared the evidence and sentence in this case with similar cases all of which involve execution style murders or murders following invasion of the

victim's home, contained in the appendix attached to this opinion. Charles Harris Hill was the prime mover in this murder beginning with his breaking down of the victim's door and continuing through the beating of the victim and his attempts to stab the victim and signaling for the victim's death. His sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur, except Ingram, J., who concurs in the affirmance of the conviction but dissents from the affirmance of the death penalty, Hall, J., who concurs specially for the reasons stated in his special concurrence in Banks v. State, 237 Ga. 325 (1976), and Gunter, J., who dissents.*

ARGUED MAY 11, 1976 — DECIDED SEPTEMBER 28, 1976 — REHEARING DENIED OCTOBER 26, 1976.

*David Botts,* for appellant.

Charles H. Hill, *pro se.*

*Alton G. Hartley, Assistant District Attorney, Edward H. Kellogg, Jr., Arthur K. Bolton, Attorney General, Isaac Byrd,* for appellee.

APPENDIX.

Similar cases considered by the court: *Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971); *Howard v. State,* 231 Ga. 186 (200 SE2d 755) (1973); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468) (1973); *Morgan v. State,* 233 Ga. 360 (211 SE2d 285) (1974); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Stack v. State,* 234 Ga. 19 (214 SE2d 514) (1975); *Owens v. State,* 233 Ga. 869 (214 SE2d 173) (1975); *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Mason v.*

*State,* 236 Ga. 46 (222 SE2d 339) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Davis v. State,* 236 Ga. 804 (225 SE2d 241) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Stephens v. State,* 237 Ga. 259 (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976); *Banks v. State,* 237 Ga. 325 (1976); *Dungee v. State,* 237 Ga. 218 (1976).

INGRAM, Justice, concurring and dissenting.

I concur in the majority opinion affirming the convictions for murder and robbery in this case but dissent to the imposition of the death sentence, as I find it disparate in view of the sentences imposed upon one of the other two defendants for the same murder.

In answer to questions I asked in oral argument, I understood counsel for the state to say that the co-defendant who did the actual killing was allowed to plead guilty and he received a sentence to life imprisonment. The third co-defendant entered a plea to a lesser offense and received a sentence of 10 years imprisonment. This particular defendant tried to prevent the victim's death and so I will not dwell on the sentence he received in the case.

What disturbs me is that I understood state's counsel at oral argument also to say that he could see no difference between what the defendant did who received the life imprisonment and what this defendant did who received the death sentence. With that in mind, I fail to see how we can conclude that equal justice under the law has been dispensed to these two defendants.

I wrote the opinion for the majority of this court in *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974) upholding the consitutionality of the death penalty statute and it was subsequently approved by the U. S. Supreme Court in Gregg v. Georgia, — U. S. — (96 SC 2909, 49 LE2d 859) (1976). I have voted to affirm the death sentence in a number of cases decided by this court since that date. However, I will not vote to affirm the death sentence in a case which I think fails to meet the requirements of the death penalty statute.

The Supreme Court of the United States leaned

heavily in its Gregg opinion on the responsibility of this court to review death sentences as mandated under Code Ann. § 27-2537. Section 27-2537 (c) (3) requires this court to determine whether "the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

I cannot conscientiously conclude that the sentence of death given this defendant is neither excessive nor disproportionate when compared to the sentence of life given the co-defendant who did the actual killing in the case. One cannot find a more similar case to compare than the case of the perpetrator co-defendant who was given the life sentence and, therefore, I would vote to vacate the death sentence in this case and remand with direction that a similar sentence be imposed upon this defendant.