## 31993. WARD v. THE STATE.

HALL, Justice.

Appellant was originally tried for the murders of Edward Surgalski and Sharynn Denise, found guilty and sentenced to life imprisonment on both counts. The case was reversed by this court because of an erroneous alibi charge. *Ward v. State,* 234 Ga. 882 (218 SE2d 591) (1975). Appellant's second trial ended in a mistrial as to guilt. This appeal is from appellant's third trial where he was again convicted of the murders of Surgalski and Denise, but this time sentenced to death by electrocution, upon a finding by the jury that the offense of murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." See Code Ann. § 27-2534.1 (b) (7).

The evidence presented by the state in the third trial was essentially the same as that presented at the first trial and summarized in *Ward v. State,* supra. The main difference in the third trial was the introduction of testimony from a DeKalb County jail inmate who testified that appellant confessed to the murders while they were both incarcerated.

1. Appellant contends that the trial court did not comply with the requirements of Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), and did not preliminarily determine that statements made by the defendant without counsel were freely and voluntarily made.

The record indicates that a Jackson v. Denno hearing was held out of the presence of the jury. Evidence of the Miranda warnings given appellant and of the statements he made to the police was heard at that time. Thereafter the trial judge admitted appellant's statements into evidence. Appellant contends that the trial judge's failure to specifically make a voluntariness ruling prior to admitting this evidence for the jury's consideration was error.

Because the transcript was unclear as to the trial judge's ruling on the voluntariness issue, we ordered him to clarify his ruling pursuant to our authority under Code

Ann. § 6-809 (b). The trial court certified that the appellant's statements were voluntarily made.[1] Therefore, this enumeration has been cured and no longer has any validity.

2. Appellant contends that the trial court erred in not allowing into evidence testimony of a psychiatrist regarding the mental competency of a state witness. We find this contention to be without merit.

The defense offered the testimony of a staff psychiatrist at the Veteran's Administration Hospital in Atlanta, presumably to impeach the credibility of Ron Ash who testified that the appellant had made certain admissions to him while they were incarcerated in DeKalb County jail. The trial court conducted a hearing out of the presence of the jury in order to determine whether or not the testimony of this witness would be admissible; it decided it would not. The record supports the trial judge's ruling that because the psychiatrist was unable to make a definite diagnosis of Ash's mental state because of insufficient observation, her testimony regarding Ash's mental competency should not go to the jury. See *Jones v. State,* 232 Ga. 762, 765 (208 SE2d 850) (1974).

3. In enumerations of error 3, 4 and 5 the appellant contends that the trial court made errors in its charge to the jury.

In error number 3 the appellant challenges the trial court's instruction on the credibility of witnesses; in particular, that portion of the charge which allows intelligence to be considered as a credibility indicator. The court's charge shows that the intelligence factor was not highlighted or singled out; it was one of several factors which could be considered. The charge given was identical to the pattern charge prepared by the Council of Superior Court Judges and very similar to the charge approved by this court in *Campbell v. State,* 237 Ga. 76, 77 (226 SE2d 601) (1976). We find the contention to be without merit.

---

[1] The trial court's order stated that "any statements the appellant had made were freely and voluntarily given without threat or duress or hope of reward" and for that reason were submitted to the jury.

In error number 4 the appellant contends that the trial court incorrectly charged the jury that a witness is unworthy of belief when it is established that he has been convicted of a felony.

The jury charge of the trial judge must be viewed as a whole. *Proctor v. State,* 235 Ga. 720, 726 (221 SE2d 556) (1975). Reading the trial judge's instructions in context, the trial judge properly charged that a witness could be impeached by proof of a prior conviction, but that an impeachment determination rested solely with the jurors and that they alone determined the weight to be given each witness' testimony. The charge as a whole was in accordance with Code Ann. § 38-1805. We find no error.

In error number 5 the appellant alleges that the trial court erred in charging the jury that they could find intent to commit the crime charged upon consideration of motive, thereby inferring that in the court's opinion there was a motive. The charge challenged is a direct quotation of Code Ann. § 26-605; motive is only one of several things that may be considered in finding intent. This court has recently upheld a similar charge of that Code section in *Dodd v. State,* 236 Ga. 572, 576 (224 SE2d 408) (1976). The charge was not erroneous.

4. In enumeration of error 6 appellant argues that because two jurors were excused for cause after voicing general objections to the death penalty, he was deprived of his right to a representative jury of his peers in violation of the Sixth and Fourteenth Amendments. In enumeration of error 7 appellant contends that the two jurors excused for cause did not meet the minimum standard set forth in Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968).

Both jurors excused made it clear that they were unalterably opposed to the death penalty and would not vote to impose it under any circumstances. This complies fully with the requirements of Witherspoon, supra, and its progeny, including Davis v. Georgia, —— U. S. —— (97 SC 399, 50 LE2d 339) (1976). See also *Gibson v. State,* 236 Ga. 874 (1) (226 SE2d 63) (1976); *Smith v. State,* 236 Ga. 12 (8) (222 SE2d 308) (1976). Appellant's contention regarding a representative jury is therefore also without merit.

5. In enumeration of error 8 appellant contends that his constitutional rights were violated when he received a death sentence at his third trial, since the first jury to convict him found no aggravating circumstances. We reverse the sentence in this case on a nonconstitutional ground.

This court is required to review all death sentences whether or not there is an appeal. We must inquire into not only enumerated errors in the proceedings as shown by the record, but we must inquire into two additional matters which may not have been raised by the enumerations of error.

The first of these two inquiries is to determine whether the death sentence was "imposed under the influence of passion, prejudice or other arbitrary factor." Code Ann. § 27-2537 (c) (1); *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975).

The second of these two inquiries is to determine whether the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Code Ann. § 27-2537 (c) (3); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974), affirmed in 428 U. S. 153 (1976); *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974). To affirm the death penalty we must find that the death penalty is not disproportionate to the penalty imposed in similar cases. That is impossible here because we have an identical case involving the same defendant in which the death penalty was not imposed. The same defendant was tried previously on the same charges and the jury imposed a life sentence. Therefore the death sentence in the case under review is obviously disproportionate to the life sentence previously imposed against the same defendant in the same case. Accordingly, the law requires us to vacate the death sentence and direct the imposition of a life sentence. See generally *Gregg v. State,* supra (sentence of death reversed in armed robbery case for disproportionateness); *Coley v. State,* supra (sentence of death reversed in rape case for disproportionateness). To do otherwise would be incongruous and contrary to the clear mandate of the law. For as was said by the United States Supreme Court in Gregg, "[t]he provision for appellate review in the Georgia

capital-sentencing system serves as a check against the random or arbitrary imposition of the death penalty. In particular, the proportionality review substantially eliminates the possibility that a person will be sentenced to die by action of an aberrant jury." Gregg, supra, 428 U. S. at 206.

The fact that a new trial was granted after the first conviction and life sentence does not permit a different conclusion. The new trial does not erase that case from the list of cases we must consider in our determination of whether the sentence in the instant case is disproportionate to similar cases.

Therefore, as prescribed by Code Ann. § 27-2537 (c) (3) and pursuant to Code Ann. § 27-2537 (e) (2), the death sentence must be set aside with direction to the trial court to enter a sentence of life imprisonment.

6. In appellant's 9th enumeration of error, he attacks the constitutionality of the Georgia death penalty statute. This contention is without merit. *Coley v. State,* 231 Ga. 829, supra; Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976).

*Judgment affirmed as to conviction; reversed and remanded with direction as to sentence.*[2] *All the Justices concur, except Nichols, C. J., Jordan and Bowles, JJ., who dissent.*

ARGUED FEBRUARY 16, 1977 — DECIDED
JUNE 9, 1977.

---

[2] Including this decision there have been 48 capital felony cases in which the death penalty was imposed and reviewed by this court pursuant to the Georgia Death Statute. 34 have been affirmed; 5 were reversed as to the guilt phase of the trial, and 9 were reversed as to the sentence. With respect to race, the cases involved 17 defendants that were white and 31 that were black. Of the 14 cases reversed as to guilt or the sentence, 11 were black and 3 were white.

*R. David Botts,* for appellant.

*M. Randall Peek, District Attorney, Calvin A. Liepold, Jr., Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.

BOWLES, Justice, dissenting.

I dissent from Division 5 of the majority opinion and the judgment of reversal of the sentence imposed.

Appellant's appeal to this court, contends that his constitutional rights were violated when he received a death sentence at his last trial, because the jury verdict in his first trial found no aggravating circumstances. The majority opinion, studiously avoids the constitutional grounds, and I conclude from what is said that this portion of the decision is based on statutory grounds, or conclusions, that the majority feels are mandated by the statute. It is constitutionally permissible for a jury to give to a defendant a more severe punishment in the second trial than in a first trial. Chaffin v. Stynchcombe, 412 U. S. 17 (93 SC 1977, 36 LE2d 714) (1973). A death sentence in a second trial as opposed to a life sentence in a first trial has been approved. Stroud v. United States, 251 U. S. 15 (40 SC 50, 64 LE 103) (1919).

There being nothing in the record to indicate that the death sentence in the second trial was "imposed under the influence of passion, prejudice, or other arbitrary factor " (Code Ann. § 27-2537 (c) (1)), and since nothing is said about this in the majority opinion, I conclude that it does not apply.

The second pertinent statutory requirement on which the majority opinion is based reads "(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in *similar cases,* considering both the crime and the defendant." Code § 27-2537 (c) (3). (Emphasis supplied.) The majority opinion says that it is not possible in this case to find the death penalty is not disproportionate to the penalty imposed in similar cases because we have "an identical case" involving the same defendant in which the death penalty was not imposed.

We readily agree that the defendant is the same and the indictment is the same, but the majority opinion fails

to point out that the evidence presented in each trial was not the same. It is reasonable to conclude that a jury trying a case would not likely impose the death penalty on an individual if the evidence against him was circumstantial or not conclusive. Under earlier law in force in this state, if the evidence against a defendant was circumstantial the court was permitted by law to set aside a sentence of death. Code § 26-1005 (1933). On the other hand, if another jury, to whom additional or different evidence is presented, finds clearly that the defendant is guilty of the crime, they would be more prone, and justly so, to impose the death penalty. The murder for which the defendant was tried and convicted, in each instance, was a horrible one, with all the elements of premeditation, revenge, and a full intention to destroy the life of the victims. The difference being, at the first trial the state did not have the benefit of evidence of a confession made by the defendant. The confession was made after the first and before the last trial. A disinterested witness testified to the confession. Thus, the *evidence* in the two trials was different and the cases as presented are different. Assuming the defendant had received a death sentence in the first trial and upon appeal was granted a new trial, under no stretch of the imagination would he be willing to accept the death sentence as being determinative of his punishment, with the second trial only determining his guilt or innocence. To adopt the majority view is to hold that our adversary system of trying an accused for a crime is somewhat like a ratchet wrench, that turns only one way, and that in the direction of the accused. It is my view that the provision concerning disproportionate penalties in similar cases, has reference to *final convictions* in the cases that are compared. It is not logical to compare final judgment in the case at bar with an inconclusive and nonfinal judgment at a prior trial, in which the evidence was not nearly so convincing or persuasive. We have approved death sentences in cases under circumstances no more horrible than those in this case. For the future should we use the first trial of Ward as a similar case? Or the last trial? If either, should we set aside the death penalty in future cases that are less vile and horrible than this case?

I am authorized to state that Chief Justice Nichols

and Justice Jordan join in this dissent.