## 33110. HALL v. THE STATE.

UNDERCOFLER, Presiding Justice.

Jimmy Don Hall was sentenced to death for the armed robbery and felony murder of Henry Williamson, the clerk of a liquor store in Muscogee County. His co-defendant James Floyd Smith received a life sentence. Hall appeals both his conviction and sentence. We affirm his conviction for felony murder, but, on sentence review, must vacate the death penalty.

1. In Enumerations of error 1, 2, 3, 4, 8, 9 and 10, Hall raises the general grounds, which he also urged in his motion for a new trial. He argues that the evidence is circumstantial and does not preclude all reasonable hypotheses except the guilt of the accused. Code Ann. § 38-109. We find that the evidence is not all circumstantial and that there is sufficient evidence to support the conviction.

Jerry Owens stopped at the Three Points Liquor Store to buy a bottle of vodka on his way home from work, about 9 p.m. on October 13, 1976. On approaching the counter, he asked the man behind the cash register, Hall, for a pack of cigarettes. At the same time, a masked, armed man, Smith, came around the counter from the grocery store side of the business and pushed him to the floor. An exchange of gunfire ensued between Smith and Williamson, resulting in the wounding of both the cashier and the defendant, Jimmy Don Hall. Williamson later died. A neighbor heard the shots and saw one man leave the store, then help another, holding his chest, into the car and depart. A third man, seen running in the opposite direction soon thereafter, was the customer, Owens, who left to call the police. A gun not kept at the liquor store was found lying on the counter.

Hall's defense was that he, Smith and a third companion, Johnny Watford, who had been seen with the two of them earlier in the evening, had stopped at the store to make a whiskey purchase. Hall was then surprised by a masked and armed Smith, who forced him,

through fear of his life, to participate in the robbery. Hall claimed he was just about to take the money[1] from the register, when Owens entered, and Smith and the cashier began the shootout. He asserts that Watford was in the grocery side of the store, and that he (Hall) was unaware of his companion's plan to commit the robbery. Watford testified for the state that he had been left at another address during the pendency of the armed robbery, although it was his car that had been used. Watford was not prosecuted for the offense. We hold that the jury was authorized to find Hall guilty of felony murder and armed robbery. However, Hall's contention in enumeration of error 18 that the armed robbery conviction must be set aside because it is a lesser included offense of felony murder is meritorious. *Burke v. State,* 234 Ga. 512 (216 SE2d 812) (1975); *Estevez v. State,* 232 Ga. 316 (206 SE2d 475) (1974).

In enumerations of error 7 and 13, Hall urges that the trial court erred in overruling his motion for new trial based on newly discovered evidence. However, he makes no argument on this point in his brief. It is clear, however, from the testimony of these witnesses at James Floyd Smith's trial that these affidavits contradicted their earlier testimony. Further, there was no showing that these witnesses were unknown at the time of defendant Hall's trial. We find no error.

2. In Enumerations 6, 12, and 17, Hall complains of the failure of the state to disclose certain evidence pursuant to his motion to produce exculpatory evidence (Brady v. Maryland, 373 U. S. 83 (1963)), and his motion to produce documentary evidence. *Brown v. State,* 238 Ga. 98 (231 SE2d 65) (1977). Under the Brady, supra, and *Brown,* supra, motions, Hall claims the state failed to produce witness Johnny Watford's prior criminal record and failed to disclose that Watford was indicted the first

---

[1] Hall's contention that the armed robbery was not completed is without merit. Some money was found on the floor, which evidence is sufficient to show the crime was completed. Cf. *Welch v. State,* 235 Ga. 243 (219 SE2d 151) (1975).

day of Hall's trial for two drug offenses. In addition, he claims that a promise not to prosecute was made to Watford, but not revealed as required under Giglio v. United States, 405 U. S. 150 (1971).

We find no error in failing to produce Watford's criminal record. His convictions were revealed to the defense prior to trial and Watford admitted these offenses on the stand at the trial upon questioning by the state.

Regarding any promises made to Watford not to prosecute in exchange for his testimony, we find no evidence. The state admitted during the hearing on the pre-trial motions that Watford had been arrested initially because his car had been identified as the getaway vehicle. He refused to answer any questions during two interrogations until October 30, when he was informed that Smith and Hall had been implicated. At that time Watford was told that the other witnesses to the crime had exonerated him and that he would not be prosecuted *unless the state discovered some evidence against him.* Watford then made a statement, testified at trial, and admitted these circumstances to the jury on cross examination. We do not find from these facts that in fact a promise had been made. Thus Giglio, supra, is distinguishable and no due process violation ensued. Compare *Potts v. State,* 241 Ga. 67 (1978).

The failure to disclose that Watford had, the day of the trial, been indicted on two drug violations is Hall's next contention. That this fact was known by the prosecution was admitted during the motion for new trial. We do not find, however, under the rules of evidence of this state that any error was committed. A witness' character may be impeached only by introduction of his criminal convictions involving moral turpitude (*Woodward v. State,* 197 Ga. 60 (28 SE2d 480) (1943)), not by showing he was indicted (*Metropolitan Life Ins. Co. v. Saul,* 189 Ga. 1 (5 SE2d 214) (1939)). Therefore, the trial court did not err in refusing to grant a new trial on this basis.

Further, we find no error in Hall's contention that he was not allowed to make copies of the police reports. Hall's attorney was permitted to inspect these reports and was shown all the physical evidence including photographs

which would be used at trial. In addition, the trial court promised to inspect the police officers' files after each testified to see that the state had complied with the requirements of Hall's Brady motion. It is clear that the defense was given copies of the police witnesses' statements at the trial because Hall's attorney cross examined these witnesses and impeached them using their prior statements. Thus there is no merit in Hall's contention that the state did not properly respond to his motion to produce under *Brown v. State,* supra.

We find no failure in the state to comply with the discovery motions of the defendant. Enumerations 6, 12 and 17 show no cause for reversal.

3. Enumeration of error 16 complains of the failure of the trial court to suppress the testimony of Dr. Edward Howard. Hall contends that these statements, which resulted from an unlawful search and seizure, violated his Fourth Amendment rights.

Hall was examined by Dr. Howard shortly after his arrest. There was no search warrant obtained and no release or consent was signed by Hall. Howard inspected the healing wounds in Hall's arm and chest and photographs were taken which were introduced at trial over the objection of the defendant. The trial court refused to suppress this evidence at a pre-trial hearing and also refused to sustain Hall's renewed objection to it at the trial. We, however, pretermit the question whether a warrant is necessary to take demonstrative evidence similar to fingerprints and voice samples. Compare Schmerber v. California, 384 U. S. 757 (86 SC 1826, 16 LE2d 908) (1966); United States v. Wade, 388 U. S. 218 (87 SC 1926, 18 LE2d 1149) (1967); *Creamer v. State,* 229 Ga. 511 (192 SE2d 350) (1972). The error, if any, to fail to obtain a warrant is harmless in this case. Fahy v. Connecticut, 375 U. S. 85 (1963); *Lawson v. State,* 236 Ga. 770 (225 SE2d 258) (1976); *Nealey v. State,* 233 Ga. 326 (211 SE2d 286) (1974).

The standard for harmless constitutional error is the balancing test set out in Schneble v. Florida, 405 U.S. 427 (1972). The rational possibility that the tainted evidence (the presence, age and location of the wounds of the defendant) contributed to the verdict is weighed against

the other untainted evidence of guilt to see if the tainted evidence could have had a prejudicial effect on the verdict of an average jury. Applying this test, it is clear that the error, if any, was harmless.

The defendant admitted at trial having been shot; he even described operating on himself to remove the bullet lodged just below the skin on his chest. His defense, that he was coerced into participating in the armed robbery, was not in any way prejudiced by the evidence concerning his wounds. We find that if any error occurred in searching his person without a warrant absent some emergency, it was harmless beyond a reasonable doubt.

4. It was not error, as asserted in Hall's twentieth enumeration of error, for the trial court to fail to allow the jurors to ask Hall questions after he testified, and to refuse to exercise his discretion to inform the jurors of any right to do so. Hall was thus not denied due process of law. We have found no Georgia authority and conclude that jurors are not permitted during trial to interrogate witnesses. Contra, Green, Georgia Law of Evidence § 131.

5. Hall raises a violation of his right to remain silent in his enumeration of error 21. The district attorney on cross examination of the defendant asked him: "Why didn't you bring this [that he was coerced into participating in the robbery] to the attention of the police after you were caught?" We agree that this question was improper. Hall answered, however, with the reasons *why he did not turn himself in to the police* after the crime was committed. In doing so, Hall merely reiterated his testimony on direct examination and was able to make his reasons for doing so clearer to the jury. He was thus not harmed.

Furthermore, Hall's attorney did not object until several questions later and by agreement of counsel the line of questioning was then not pursued. The defense attorney stated on the record at that time that he did not wish to ask for a mistrial. We find no reversible error.

6. Enumeration of error 22 sets out Hall's complaint that the district attorney committed error in reading law to the jury. It is clear, however, that the prosecutor was discussing the case with the court. The jury was present and Hall's attorney objected for this reason, but was

overruled by the court.

The statements read to the court from the case of *Burke v. State,* supra, involved a correct statement of the law on conspiracy, which principle was later charged to the jury by the court. *Jackson v. State,* 219 Ga. 819 (136 SE2d 375) (1964). It is not improper for the state to call the court's attention to an applicable principle of law by reference to a case even where the jury is present. Code Ann. § 24-3319 is inapplicable to this situation.

7. Enumerations 23 and 24 relate to the court's charge to the jury. Hall contends the court erred in failing to charge on impeachment of witnesses and in refusing to give his requested charge on the need for corroboration of an accomplice's testimony.

The trial court was not requested to charge on impeachment of witnesses. Generally, the parties are responsible for requesting charges appropriate to their contentions (Code Ann. § 70-207 (b)), but the trial court must fairly present the case to the jury. *Spear v. State,* 230 Ga. 74 (195 SE2d 397) (1973). In the absence of a request, Code Ann. § 70-207 (c) requires a new trial only "where there has been a substantial error in the charge which was harmful as a matter of law regardless of whether objection was made hereunder or not." We have held many times that the failure to charge on impeachment without a request is not a substantial error, harmful as a matter of law. *Tanner v. State,* 228 Ga. 829 (188 SE2d 512) (1972); *Baker v. State,* 121 Ga. 189 (48 SE 967) (1904).

The refusal of the trial court to charge as requested that, if the jury found Watford was an accomplice, his testimony must be corroborated is raised in Enumeration 24. Code Ann. § 38-121 provides that "[t]he testimony of a single witness is generally sufficient to establish a fact. Exceptions to this rule are made. . .in any case of felony where *the only witness is an accomplice. . .* in these cases. . . corroborating circumstances may dispense with another witness." Since, in the case before us, there were other witnesses to the crime so that the state did not rely solely on Watford's testimony, this Code section is inapplicable. Therefore, no error was committed by the trial court in refusing to give the requested charge on corroboration. Cf. *Tamplin v. State,* 235 Ga. 20 (218 SE2d 779) (1975);

*Wilson v. State,* 51 Ga. App. 570 (181 SE 134) (1935); *DeWitt v. State,* 27 Ga. App. 644 (109 SE 681) (1921).

8. In Enumerations 5, 11, 14, 15, 19, 25, 26 and 27, Hall raises questions involving the imposition of the death penalty. We here reiterate in response to Enumeration 14 that the death penalty is not unconstitutional. *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974); Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976).

Under our mandatory review of all death sentences, we must consider whether this penalty was "imposed under the influence of passion, prejudice or other arbitrary factor" (Code Ann. § 27-2537 (c) (1)), and whether the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant" (Code Ann. § 27-2537 (c) (3)). We reach the latter question first.

While Hall was here sentenced to death by a jury, his co-defendant, James Floyd Smith, received a life sentence in a subsequent jury trial. It is clear from the evidence that Smith inflicted the fatal gunshot wound. Indeed, it appears that, if Hall had a gun, it was lying on the counter.

We considered in our sentence comparison review in *Ward v. State,* 239 Ga. 205 (236 SE2d 365) (1977), the sentences given to the same defendant for the same crime in separate trials. Ward was tried three times. The first trial resulted in a conviction and life sentence which was reversed on appeal, the second ended in a mistrial, and the third, in a conviction and death sentence. We held: "To affirm the death penalty we must find that the death penalty is not disproportionate to the penalty imposed in similar cases. That is impossible here because we have an identical case involving the same defendant in which the death penalty was not imposed. . . Therefore the death sentence. . .is obviously disproportionate to the life sentence previously imposed against the same defendant in the same case. Accordingly, the law requires us to vacate the death sentence. . ." *Ward v. State,* supra, p. 208. Likewise, because of the similarity of the crime, we must give special consideration to the sentence received by the co-defendants in the same crime.

This court has many times affirmed the death penalty for the triggerman where the other participants did not receive a similar sentence. E.g., *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974). We have also affirmed death sentences for more than one, but not necessarily all of the participants in a criminal transaction. E.g., *Thomas v. State,* 240 Ga. 393 (242 SE2d 1) (1977); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Gaddis v. State,* 239 Ga. 238 (236 SE2d 594) (1977); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976) and *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976).

In *Hill v. State,* 237 Ga. 794 (229 SE2d 737) (1976), we considered on sentence review the sentences received by co-defendants in the same criminal transaction. There, we affirmed the death penalty where it was unclear whether Hill or his co-defendant, Gary Watts, actually cut the victim's throat,[2] although the evidence tended to point to Watts. Watts pleaded guilty and received a life sentence. In affirming Hill's death sentence, we said, ". . . Hill was the prime mover in this murder beginning with his breaking down of the victim's door and continuing through the beating of the victim and his attempts to stab the victim and signaling for the victim's death [by a thumbs down gesture and by saying: 'We got to kill, you know.']" *Hill v. State,* supra, pp. 795, 803. We find the case before us distinguishable from *Hill* on the facts.

The evidence presented at both Smith's and Hall's trials shows that Smith was in fact the gunman. Yet Smith received only a life sentence from his jury. In both cases, evidence of prior convictions was introduced at the sentence hearing.[3] In both cases, the only aggravating

---

[2] The Board of Pardons & Paroles later commuted Hill's sentence to life.

[3] The state introduced evidence that Hall had

circumstance presented to the jury was that the "offense of murder was committed while the offender was engaged in the commission of another capital felony." We find that, under these circumstances, the death sentence, imposed upon Hall for the same crime in which the co-defendant triggerman received a life sentence, is disproportionate. There is no evidence here, as in *Hill,* supra, that Hall ordered the killing or was the "prime mover" in the crime. It appears that Smith fired the fatal shot because the victim was firing at them. Hall had already been hit when Smith shot the victim and they fled without the money.

In reaffirming *Hill v. State,* supra, we intend to make clear that we are not creating a per se rule that where the triggerman does not receive the death sentence, it may not be imposed on other participants in the crime. Such distinctions will be made only in a case by case determination. See, e.g., *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977) (Hill, J., concurring specially) (death penalty reversed on other grounds).

The death penalty imposed on Hall for murder is vacated, and the trial court is ordered to enter a life sentence. The life sentence imposed for armed robbery is also vacated under our ruling in Division 1.

Because we have vacated the death sentence, we need not reach the questions raised in Enumerations 19, 25, and 27.

*Judgment affirmed as to the conviction for felony murder and reversed for armed robbery; reversed and remanded with direction as to the sentence. All the Justices concur, except Nichols, C. J., who concurs in the judgment*

---

pleaded guilty to two indictments for robbery by intimidation in 1957, for which he received two 3 to 5 year concurrent sentences, had a 1971 jury conviction and sentence of 10 years for armed robbery, and had a 1976 guilty plea to selling a controlled substance, hydromorphone, with 3 years on probation.

In Smith's trial, the state produced a 1969 jury verdict against him for robbery by use of an offensive weapon, for which he received 15 years, and a 1-year sentence for a guilty plea to escape.

*only and Bowles, Jordan and Marshall, JJ., who dissent as to the sentence.*

ARGUED JANUARY 17, 1978 — DECIDED APRIL 5, 1978 — REHEARING DENIED APRIL 25, 1978.

*Swearingen, Childs & Philips, John C. Swearingen, Jr., Ben Philips,* for appellant.

*William J. Smith, District Attorney, Arthur K. Bolton, Attorney General, James L. Mackay, Assistant Attorney General,* for appellee.

JORDAN, Justice, dissenting.

I dissent from Division 8 of the opinion vacating the death sentence of the appellant on the basis that his co-defendant at a subsequent trial was only given a life sentence.

Under the sentence review provisions of the death penalty statute we are required (1) to determine whether a particular jury in a particular case imposed the death sentence under the influence of passion, prejudice or some arbitrary factor. Such does not appear in this case. The facts amply authorize the conviction for felony murder and the sentence of death.

We are required (2) to consider whether "the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, *considering both the crime and the defendant.*" (Emphasis supplied.) While the evidence and circumstances surrounding a crime might be similar, yet a consideration of the *defendant,* including his demeanor in connection with the crime as well as his past history and record, though not the triggerman, might well authorize a verdict of death where his confederate would be meted lighter punishment.

As an aid to this court in making the latter determination, a report completed by the trial court must accompany each death sentence review. This report includes questions concerning the defendant's age, family status, education, past criminal behavior, and many other pertinent facts which usually do not appear in the record of the trial. A thorough appraisal of this report in the

instant case leads me to the conclusion that this court can reasonably uphold the death sentence of this appellant even though his confederate, the "triggerman," received only a life sentence.

The FBI record attached to this report shows a long and continuous criminal record dating from 1956 to the present time. In 1956 Hall was convicted for resisting arrest; on October 3, 1956, he was arrested on a charge of robbery and on March 13, 1957, arrested on a charge of robbery by intimidation. For those offenses he was sentenced on each charge to a term of 3 to 5 years to run concurrently. He apparently escaped and was arrested in Chicago on a fugitive warrant on March 13, 1958. On December 3, 1960, he received a 6-year sentence for robbery by force. On October 17, 1963, he was charged with burglary and receiving stolen property and sentenced to 10 years on February 20, 1964. On May 19, 1969, he was charged with robbery by the use of an offensive weapon and found not guilty. In 1971, he was convicted for armed robbery and given a 10-year sentence. In 1976, he entered a plea of guilty to selling a controlled drug and sentenced to 3 years on probation. On this occasion in 1976 he engaged in an armed robbery resulting in the death of the store clerk. This record shows him to be a habitual criminal, either behind bars or outside engaging in serious crimes, for more than 20 years.

The report further shows that the appellant Hall completed high school and was 40 years old at the time this crime occurred. The report further shows that there was no physical or mental condition calling for special consideration and that there was absolutely no evidence of any mitigating circumstances.

As to the co-defendant Smith who received the life sentence, his prior criminal record consisted only of a conviction for robbery by use of an offensive weapon in 1969 and a sentence of 1 year for escape while serving the robbery sentence. The record shows him to be 34 years old, with a wife and 4 children in his household. At the sentencing phase of his trial, defense counsel asked the jury to consider the facts in "regard to his family condition" in mitigation.

In the guilt phase of Smith's trial, he took the stand

and steadfastly denied any participation in the crime, though he was identified by a witness for the state as being one of the three participants. Even though the jury found him to be a participant, and even though the evidence indicates he fired the fatal shot, the jury could have concluded from Smith's statement and other evidence that Hall was the leader or "prime mover" in setting up the crime. See *Hill v. State,* 237 Ga. 794 (229 SE2d 737) (1976).

Considering the defendant Hall's background, character, and record, I cannot conclude that the crime for which Hall and Smith were convicted was "similar," considering both the crime and the *defendant.* Code Ann. § 27-2537 (c) (3). Based on this review, it cannot be said that Hall's sentence was excessive or disproportionate in comparison with the sentence received by his co-defendant Smith.

I respectfully dissent. I am authorized to state that Justice Bowles and Justice Marshall join in this dissent.